## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE EISNER ADVISORY GROUP DATA BREACH LITIGATION | Case No.: 0:25-cv-1409 |
| | Judge: Hon. Laura M. Provinzino |
| | **<u>JURY TRIAL DEMANDED</u>** |

## <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>

Plaintiffs Christopher Niosi, Ryan Hiatt, Andrew Marston, Robert Crist, and Rebecca L. Lemmons ("Plaintiffs"), through their undersigned counsel, bring this action against Eisner Advisory Group LLC ("Eisner" or "Defendant") pursuant to the investigation of their attorneys, personal knowledge as to themselves and their own acts and otherwise upon information and belief, and allege as follows:

## <u>INTRODUCTION</u>

1.     Eisner is a full-service accounting and auditor that does business as EisnerAmper. It has offices throughout the United States, including one in Minneapolis.

2.     On or about April 8, 2025, Eisner announced publicly that in or around September 2023, it had been the recipient of a hack and exfiltration of sensitive personal information ("SPI") involving approximately 85,000 individuals (the "Data Breach").[1]

---

[1] https://www.eisneramper.com/globalassets/pdfs/eisner_website-notice_with-hotline.pdf, last accessed April 14, 2025

3.      Eisner has stated that the information obtained in the hack included at least "name[s], address[es], Social Security number[s], driver's license number[s] or other state issued identification number[s], passport number[s], date[s] of birth, financial account information, payment card information, medical information, or health insurance information."[2]

4.      While Eisner has offices around the country and is headquartered in New York City, Eisner's general counsel has publicly identified the Minneapolis office as being the office responsible for the Data Breach.[3]

5.      Plaintiffs and Class members now face a present and imminent lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers.

6.      The information stolen in cyber-attacks allows the modern thief to assume your identity when carrying out criminal acts such as:

- Using your credit history.

- Making financial transactions on your behalf, including opening credit accounts in your name.

- Impersonating you via mail and/or email.

- Impersonating you in cyber forums and social networks.

---

[2] *Id.*

[3] *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/602a61a2-18b4-4e62-be78-93cfe3ef3653.html, last accessed April 14, 2025.

- Stealing benefits that belong to you.

- Committing illegal acts which, in turn, incriminate you.

7.     Plaintiffs' and Class members' SPI was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the SPI of Plaintiffs and Class members.

8.     To date, there exist many class members who have no idea their SPI has been compromised, and that they are at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

9.     Plaintiffs bring this action on behalf of all persons whose SPI was compromised as a result of Defendant's failure to: (i) adequately protect individuals' SPI, (ii) adequately warn these individuals of its inadequate information security practices, and (iii) effectively monitor its platforms for security vulnerabilities and incidents (the "Class"). Defendant's conduct amounts to negligence and violates federal and state statutes.

10.     Plaintiffs and similarly situated individuals have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished inherent value of SPI; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their SPI; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) deprivation of rights they possess under state and common law; and (v) the continued and certainly an increased risk to their SPI, which remains in Defendant's possession and is subject to further unauthorized disclosures so

long as Defendant fails to undertake appropriate and adequate measures to protect the SPI.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

12.     This Court has specific personal jurisdiction over Defendant because Defendant maintains an office within this District from which the actions described *infra* originated.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from this District. Defendant maintains an office within this judicial district and a substantial part of the events giving rise to the claims alleged herein occurred within this judicial District.

## PARTIES

14.     Plaintiff Christopher Niosi is a natural person and citizen of Minnesota residing in Rice County. On or about April 12, 2025, Plaintiff was informed via letter dated April 8, 2025, that he had been a victim of the Data Breach.

15.     Plaintiff Ryan Hiatt is a natural person and citizen of Montana residing in Gallatin County. On or about April 12, 2025, Plaintiff was informed via letter dated April 8, 2025, that he had been a victim of the Data Breach.

16.     Plaintiff Andrew Marston is, and at all relevant times herein was, an individual citizen of the State of Minnesota, residing in Hennepin County. Plaintiff received a data breach notice letter dated April 8, 2025, informing him that he had been a victim of the Data Breach.

17.     Plaintiff Robert Crist is an adult individual and, at all relevant times herein, was a resident and citizen of California, residing in Santa Clara County. On or about April 8, 2025, Plaintiff Crist was notified of the Data Breach and of the impact to his SPI via letter from Defendant.

18.     Plaintiff Rebecca L. Lemmons is an adult individual and, at all relevant times herein, a resident and citizen of Florida, residing in Pasco County. Some time prior to September 2023, Plaintiff Lemmons obtained accounting and tax advisory services through a law firm that utilizes the Eisner network and, therefore, is an Eisner customer and a victim of the Data Breach. On or about April 8, 2025, Plaintiff was notified of the Data Breach and of the impact to her SPI via letter from Defendant.

19.     Defendant Eisner Advisory Group LLC is a Delaware limited-liability company with its principal place of business at 733 Third Ave., New York, New York. It maintains a Minnesota office at 2501 S. Wayzata Blvd., Minneapolis, Minnesota.

## FACTUAL ALLEGATIONS

20.     As stated above, Defendant is a full-service accounting firm and auditor.

21.     In the ordinary course of doing business, Defendant collects SPI from its clients (generally the employers of individuals whose SPI is collected) such as:

    a.    Contact and account information, such as name, usernames, passwords, address, telephone number, and email addresses;

    b.    Authentication and security information such as government identification, Social Security number, driver's license number, and signature;

    c.    Demographic information, such as age, gender, and date of birth;

    d.    Health information; including health insurance information; patient histories, and information involving visits to other health professionals; and

    e.    Payment information; including bank account or credit card information.

22.    On or about April 8, 2025, Defendant announced publicly that on or around September 9, 2023, it became aware of a hack and exfiltration of SPI involving affected individuals.[4]

23.    Defendant further stated:

On September 9, 2023, Eisner became aware of suspicious activity with respect to a limited set of information. Eisner then launched an investigation into the nature and scope of the incident. The investigation determined that there was unauthorized access to this limited set of information between September 4, 2023, and September 9, 2023, and that these certain files were acquired by an unknown actor. In response, Eisner conducted a detailed review of the files determined to be at risk by this incident to identify the type of information stored therein and to whom that information related. On February 13, 2025, Eisner completed this review.[5]

---

[4] *Id.*

[5] *Id.*

24.     Concerningly, Eisner has been very vague on its response to the Data Breach, only saying that "[u]pon discovering the event, Eisner moved quickly to investigate and respond to the incident, assess the security of Eisner systems, and identify potentially affected individuals. Eisner has also implemented and is continuing to implement additional safeguards and training to its employees."[6]

25.     As a result, Plaintiffs' and class members' SPI was in the hands of hackers for at least a year and a half before Defendant began notifying them of the Data Breach.

26.     As of this writing, Defendant has offered no concrete information on the steps it has taken or specific efforts made to reasonably ensure that such a breach cannot or will not occur again.

27.     Defendant has stated that it will be offering twelve months of credit monitoring to affected individuals, however, this is approximately six months less than the time that has already passed since the Data Breach occurred.

28.     This response is entirely inadequate to Plaintiffs and class members who now potentially face several years of heightened risk from the theft of their SPI and who may have already incurred substantial out-of-pocket costs in responding to the Data Breach.

29.     Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class members, to keep their SPI confidential and to protect it from unauthorized access and disclosure.

---

[6] *Id.*

30.    Plaintiffs and Class members provided their SPI to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

31.    Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches in the cellular communications services industry preceding the date of the breach.

32.    Indeed, data breaches, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendant's industry, including Defendant.

33.    According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve.[7] Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank and finance fraud.[8]

---

[7] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (Apr. 2013), https://dss.mo.gov/cd/older-youth-program/files/taking-charge-what-to-do-if-identity-is-stolen.pdf, last accessed April 14, 2025.

[8] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government

34.     The SPI of Plaintiffs and members of the Classes was taken by hackers to engage in identity theft or and or to sell it to other criminals who will purchase the SPI for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

35.     Defendant knew, or reasonably should have known, of the importance of safeguarding the SPI of Plaintiffs and members of the Class, including Social Security numbers, driver license or state identification numbers, and/or dates of birth, and of the foreseeable consequences that would occur if Defendant's data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiffs and members of the Class a result of a breach.

36.     Plaintiffs and members of the Class now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their SPI.

37.     The injuries to Plaintiffs and members of the Class were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the SPI of Plaintiffs and members of the Class.

38.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

---

issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

39.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their networks' vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

40.     The FTC further recommends that companies not maintain SPI longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

41.     The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

42.     Defendant failed to properly implement basic data security practices, and its

failure to employ reasonable and appropriate measures to protect against unauthorized access to student and applicant SPI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

43.    A number of industry and national best practices have been published and should have been used as a go-to resource and authoritative guide when developing Defendant's cybersecurity practices.

44.    Best cybersecurity practices include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

45.    Upon information and belief, Defendant failed to meet the minimum standards of the following cybersecurity frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

46.    These foregoing frameworks are existing and applicable industry standards in Defendant's industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber-attack and causing the Data Breach.

47.    Businesses that store personal information are likely to be targeted by cyber

criminals. Credit card and bank account numbers are tempting targets for hackers. However, information such as dates of birth and Social Security numbers are even more attractive to hackers; they are not easily destroyed and can be easily used to perpetrate identity theft and other types of fraud.

48.    The SPI of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9]

49.    Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration ("SSA") stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[10]

---

[9] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs, last accessed April 14, 2025.

[10] SSA, *Identity Theft and Your Social Security Number*, SSA Publication No. 05-10064 (Jun. 2018), https://www.ssa.gov/pubs/EN-05-10064.pdf, last accessed April 14, 2025.

50.    What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

51.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[11]

52.    Furthermore, as the SSA warns:

Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.

If you receive a new Social Security Number, you should not be able to use the old number anymore.

For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new

---

[11] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthems-hackers-has-millionsworrying-about-identity-theft, last accessed April 14, 2025.

number, the absence of any credit history under the new number may make more difficult for you to get credit.[12]

53.     Here, the unauthorized access left the cyber criminals with the tools to perform the most thorough identity theft—they have obtained all the essential SPI to mimic the identity of the user. The personal data of Plaintiffs and members of the Class stolen in the Data Breach constitutes a dream for hackers and a nightmare for Plaintiffs and the Class. Stolen personal data of Plaintiffs and members of the Classes represents essentially one-stop shopping for identity thieves.

54.     The FTC has released its updated publication on protecting SPI for businesses, which includes instructions on protecting SPI, properly disposing of SPI, understanding network vulnerabilities, implementing policies to correct security problems, using intrusion detection programs, monitoring data traffic, and having in place a response plan.

55.     General policy reasons support such an approach. A person whose personal information has been compromised may not see any signs of identity theft for years. According to the United States Government Accountability Office ("GAO") Report to Congressional Requesters:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot

---

[12] SSA, *Identity Theft and Your Social Security Number*, SSA Publication No. 05-10064 (Jun. 2018), http://www.ssa.gov/pubs/EN-05-10064.pdf, last accessed April 14, 2025.

necessarily rule out all future harm.[13]

56.    Companies recognize that SPI is a valuable asset. Indeed, SPI is a valuable commodity. A "cyber black-market" exists in which criminals openly post stolen Social Security numbers and other SPI on a number of Internet websites. The stolen personal data of Plaintiffs and members of the Class has a high value on both legitimate and black markets.

57.    Identity thieves may commit various types of crimes such as immigration fraud, obtaining a driver license or identification card in the victim's name but with another's picture, and/or using the victim's information to obtain a fraudulent tax refund or fraudulent unemployment benefits. The United States government and privacy experts acknowledge that it may take years for identity theft to come to light and be detected.

58.    As noted above, the disclosure of Social Security numbers in particular poses a significant risk. Criminals can, for example, use Social Security numbers to create false bank accounts or file fraudulent tax returns. Defendant's former and current customers whose Social Security numbers have been compromised now face a real, present, imminent and substantial risk of identity theft and other problems associated with the disclosure of their Social Security number and will need to monitor their credit and tax filings for an indefinite duration.

59.    Based on the foregoing, the information compromised in the Data Breach is

---

[13] *See* https://www.gao.gov/assets/gao-07-737.pdf (June 2007) at 29, last accessed April 14, 2025.

significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change — Social Security number, driver license number or government-issued identification number, name, and date of birth.

60.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[14]

61.    Among other forms of fraud, identity thieves may obtain driver licenses, government benefits, medical services, and housing or even give false information to police. An individual may not know that his or her driver license was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud, or until the individual attempts to lawfully apply for unemployment and is denied benefits (due to the prior, fraudulent application and award of benefits)

## FACTS SPECIFIC TO PLAINTIFFS

62.    On or about April 11, 2025, Plaintiff Niosi was notified via letter from Defendant dated April 8, 2025, that Plaintiff's SPI had been taken as part of the Data

---

[14] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html, last accessed April 14, 2025.

Breach.

63.     Plaintiff Niosi has no knowledge of how Defendant acquired Plaintiff's SPI.

64.     On September 5, 2023, Plaintiff Niosi discovered that an unknown individual had fraudulently opened a credit card with his name via Wells Fargo and successfully used that card to make over a thousand dollars in charges (and accumulated rewards points) that Plaintiff never made. Wells Fargo attempted several times to collect the amounts charged (with interest) from Plaintiff.

65.     Plaintiff Niosi spent approximately four months talking to Wells Fargo, his local police, and consulting an attorney in order to close the credit card and restore his credit.

66.     Further, Plaintiff Niosi has experienced anxiety, emotional distress, and increased concerns for the loss of his privacy since the time of the breach.

67.     Plaintiff Niosi is aware of no other source from which the theft of his SPI could have come, especially during the window of September 4 to September 9, 2023. He regularly takes steps to safeguard his SPI in his own control.

68.     On or about April 12, 2025, Plaintiff Hiatt was notified via letter from Defendant that Plaintiff's SPI had been taken as part of the Data Breach.

69.     Plaintiff Hiatt has no knowledge of how Defendant acquired Plaintiff's SPI.

70.     Since the time of the Data Breach, Plaintiff Hiatt has received a large number of spam emails attempting to get him to apply for various loans. As a result of the Data Breach and the resulting suspicious activity, Plaintiff Hiatt has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data

Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. He has also spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

71.     As a result of the Data Breach, Plaintiff Hiatt has suffered anxiety due to the public dissemination of his SPI, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his private information for purposes of identity theft and fraud. Plaintiff Hiatt is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

72.     Plaintiff Hiatt suffered actual injury from having his SPI compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his SPI a form of property that Defendant obtained from him; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

73.     As a result of the Data Breach, Plaintiff Hiatt anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is and will continue to be at increased risk of identity theft and fraud for years to come.

74.     Plaintiff Hiatt is aware of no other source from which the theft of his SPI could have come. He regularly takes steps to safeguard his SPI in his own control.

75.     On or about April 12, 2025, Plaintiff Marston was notified via letter from

Defendant that Plaintiff's SPI had been taken as part of the Data Breach.

76.    Plaintiff Marston has no knowledge of how Defendant acquired Plaintiff's SPI.

77.    Since the time of the Data Breach, Plaintiff Marston has received a large number of spam emails attempting to get him to apply for various loans. As a result of the Data Breach and the resulting suspicious activity, Plaintiff Marston has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. He has also spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

78.    As a result of the Data Breach, Plaintiff Marston has suffered anxiety due to the public dissemination of his SPI, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his private information for purposes of identity theft and fraud. Plaintiff Marston is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

79.    Plaintiff Marston suffered actual injury from having his SPI compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his SPI, a form of property that Defendant obtained from him; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

80.    As a result of the Data Breach, Plaintiff Marston anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is and will continue to be at increased risk of identity theft and fraud for years to come.

81.    On or about April 12, 2025, Plaintiff Crist was notified via letter from Defendant that Plaintiff's SPI had been taken as part of the Data Breach.

82.    Plaintiff Crist has no knowledge of how Defendant acquired Plaintiff's SPI.

83.    Since the time of the Data Breach, Plaintiff Crist has received a large number of spam emails. As a result of the Data Breach and the resulting suspicious activity, Plaintiff Crist has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. He has also spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

84.    As a result of the Data Breach, Plaintiff Crist has suffered anxiety due to the public dissemination of his SPI, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his private information for purposes of identity theft and fraud. Plaintiff Crist is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

85.    Plaintiff Crist suffered actual injury from having his SPI compromised as a

result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his SPI, a form of property that Defendant obtained from him; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

86.    As a result of the Data Breach, Plaintiff Crist anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is and will continue to be at increased risk of identity theft and fraud for years to come.

87.    On or about April 12, 2025, Plaintiff Lemmons was notified via letter from Defendant that Plaintiff's SPI had been taken as part of the Data Breach.

88.    Plaintiff Lemmons has learned that a law firm that she used was working with Defendant, which is how Defendant acquired Plaintiff's SPI.

89.    Since the time of the Data Breach, Plaintiff Lemmons has received a large number of spam emails. As a result of the Data Breach and the resulting suspicious activity, Plaintiff Lemmons has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. She has also spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including, but not limited to, work and recreation.

90.    As a result of the Data Breach, Plaintiff Lemmons has suffered anxiety due to the public dissemination of her SPI, which she believed would be protected from

unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her private information for purposes of identity theft and fraud. Plaintiff Lemmons is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

91.    Plaintiff Lemmons suffered actual injury from having her SPI compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her SPI, a form of property that Defendant obtained from her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

92.    As a result of the Data Breach, Plaintiff Lemmons anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, she is and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ACTION ALLEGATIONS

93.    Plaintiffs brings this nationwide class action, pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of all members of the following class:

> All natural persons residing in the United States whose SPI was compromised in the Data Breach announced by Defendant on or about April 8, 2025. (the "Class").

94.    Plaintiff Robert Crist also brings this class action, pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of all members of the following subclass:

All natural persons residing in the State of California whose SPI was compromised in the Data Breach announced by Defendant on or about April 8, 2025. (the "Subclass").

95.    Excluded from the Class are all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, and all judges assigned to hear any aspect of this litigation and their immediate family members.

96.    Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

97.    **Numerosity**: The Class and Subclass are so numerous that joinder of all members is impracticable. Defendant has, as of this writing, indicated to the Maine Attorney General that the total number of Class members is approximately 84,795. The Class is readily identifiable within Defendant's records.

98.    **Commonality**: Questions of law and fact common to the Class and Subclass exist and predominate over any questions affecting only individual members of the Class and Subclass. These include:

a.    When Defendant actually learned of the Data Breach and whether its response was adequate;

b.    Whether Defendant owed a duty to the Class and Subclass to exercise due care in collecting, storing, safeguarding and/or obtaining their SPI;

c.    Whether Defendant breached that duty;

d.    Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of storing the SPI of Plaintiffs and members of the Class and Subclass;

e.   Whether Defendant acted negligently in connection with the monitoring and/or protection of SPI belonging to Plaintiffs and members of the Class and Subclass;

f.   Whether Defendant knew or should have known that it did not employ reasonable measures to keep the SPI of Plaintiffs and members of the Class and Subclass secure and to prevent loss or misuse of that SPI;

g.   Whether Defendant have adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

h.   Whether Defendant caused Plaintiffs and members of the Class and Subclass damage;

i.   Whether Defendant violated the law by failing to promptly notify Plaintiffs and members of the Class and Subclass that their SPI had been compromised; and

j.   Whether Plaintiffs and the other members of the Class and Subclass are entitled to credit monitoring and other monetary relief.

99.   **Typicality**: Plaintiffs' claims are typical of those of the other members of the Class and Subclass because all had their SPI compromised as a result of the Data Breach due to Defendant's misfeasance.

100.   **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and Subclass. Plaintiffs' counsel are competent and experienced in litigating privacy-related class actions.

101.   **Superiority and Manageability**: Under Rule 23(b)(3) of the Federal Rules

of Civil Procedure, a class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class and Subclass is impracticable. Individual damages for any individual member of the Class and Subclass are likely to be insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's misconduct would go unpunished. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

102.    Class certification is also appropriate under Rule 23(a) and (b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class.

103.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

> a.    Whether Defendant owed a legal duty to Plaintiffs and members of the Class and Subclass and to exercise due care in collecting, storing, using, and safeguarding their SPI;
>
> b.    Whether Defendant breached a legal duty to Plaintiffs and the members of the Class and Subclass to exercise due care in collecting, storing, using, and safeguarding their SPI;

c.   Whether Defendant failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

e.   Whether members of the Class and Subclass are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

## FIRST CLAIM FOR RELIEF
### Negligence
### (By Plaintiffs Individually and on Behalf of the Class)

104.   Plaintiffs hereby re-allege and incorporate by reference all of the allegations in paragraphs 1 to 103.

105.   Defendant appears to routinely handle SPI that is required of its customers, which includes the SPI of Plaintiffs and members of the Class and Subclass.

106.   By collecting and storing the SPI of its customers, Defendant owed a duty of care to the individuals whose SPI it collected to use reasonable means to secure and safeguard that SPI.

107.   As a company that routinely handles SPI, Defendant is aware of the duty of care regarding the safeguarding of SPI.

108.   Defendant has full knowledge of the sensitivity of SPI and the types of harm that Plaintiffs and Class members could and would suffer if the SPI were wrongfully

disclosed.

109.    Defendant knew or reasonably should have known that its failure to exercise due care in the collecting, storing, and using of this SPI involved an unreasonable risk of harm to Plaintiffs and Class members, even if the harm occurred through the criminal acts of a third party.

110.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiffs' and Class members' information in Defendant's possession was adequately secured and protected.

111.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and Class members' SPI.

112.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class members was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

113.    Plaintiffs and the Class members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the SPI of Plaintiffs and the Class and Subclass, the critical importance of providing adequate security of that SPI, and the necessity for encrypting SPI stored on Defendant's systems.

114.    Defendant's own conduct created a foreseeable risk of harm to Plaintiffs and Class members. Defendant's misconduct included, but was not limited to, its failure to take

the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of Plaintiffs' and Class members' SPI, including basic encryption techniques freely available to Defendant.

115.    As a sophisticated accounting company that routinely handles sensitive information, Defendant had a duty of care to Plaintiffs and Class members.

116.    Plaintiffs and the Class members had no ability to protect their SPI that was in, and possibly remains in, Defendant's possession.

117.    Defendant was in a position to protect against the harm suffered by Plaintiffs and Class members as a result of the Data Breach.

118.    Defendant had and continues to have a duty to adequately disclose that the SPI of Plaintiffs and Class members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and Class members to take steps to prevent, mitigate, and repair any identity theft and fraudulent use of their SPI by third parties.

119.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the SPI of Plaintiffs and Class members.

120.    Defendant has admitted that the SPI of Plaintiffs and Class members was purposely exfiltrated and disclosed to unauthorized third persons as a result of the Data Breach.

121.    Defendant, through its actions and/or omissions, unlawfully breached its

duties to Plaintiffs and Class members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the SPI of Plaintiffs and Class members during the time the SPI was within Defendant's possession or control.

122.    Defendant improperly and inadequately safeguarded the SPI of Plaintiffs and Class members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

123.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the SPI it had in its possession in the face of increased risk of theft.

124.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of the SPI in question.

125.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiffs and Class members the existence and scope of the Data Breach.

126.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiffs and Class members, the SPI of Plaintiffs and Class members would not have been compromised.

127.    There is a close causal connection between Defendant's failure to implement security measures to protect the SPI of Plaintiffs and Class members and the harm suffered or risk of imminent harm suffered by Plaintiffs and the Class and Subclass. Plaintiffs' and Class members' SPI was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such SPI by adopting, implementing, and

maintaining appropriate security measures.

128.    Given Defendant's sophistication in the provision of accounting services and the potential likelihood of injury should it fail in its duties, the burden on Defendant to properly safeguard Plaintiffs' and Class members' SPI would be relatively light.

129.    As a direct and proximate result of Defendant's negligence, Plaintiffs and Class members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their SPI is used; (iii) the compromise, publication, and/or theft of their SPI; (iv) damages for emotional distress and anxiety; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) the continued risk to their SPI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the SPI in its possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the SPI compromised as a result of the Data Breach for the remainder of Plaintiffs' and Class members' lives.

130.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiffs and Class members have suffered and will continue to suffer anxiety and emotional distress, as well as suffering the continued risks of exposure of their SPI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the SPI

in its continued possession.

## SECOND CLAIM FOR RELIEF
### Breach of Third-Party Beneficiary Contract,
### (By Plaintiffs Individually and on Behalf of the Class)

131. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 103.

132. Upon information and belief, Defendant entered into contracts with its corporate customers to provide services to them; services that included data security practices, procedures, and protocols sufficient to safeguard the SPI that was entrusted to it.

133. Such contracts were made expressly for the benefit of Plaintiffs and the Class and Subclass, as it was their SPI that Defendant agreed to receive, store, utilize, transfer, and protect through its services. Thus, the benefit of collection and protection of the SPI belonging to Plaintiffs and the Class was the direct and primary objective of the contracting parties, and Plaintiffs and Class members were direct and express beneficiaries of such contracts.

134. Defendant knew or should have known that if it were to breach these contracts with its customers, Plaintiffs and Class members would be harmed.

135. Defendant breached its contracts with its customers by, among other things, failing to adequately secure Plaintiffs and Class members' SPI, and, as a result, Plaintiffs and Class members were harmed.

136. As a direct and proximate result of Defendant's breach, Plaintiffs and Class members are at a current and ongoing risk of identity theft, and Plaintiffs and Class members sustained incidental and consequential damages including: (i) financial "out of

pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (ii) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (iii) financial "out of pocket" costs incurred due to actual identity theft; (iv) loss of time incurred due to actual identity theft; (v) loss of time due to increased spam and targeted marketing emails; (vi) diminution of value of their SPI; (vii) future costs of identity theft monitoring; (viii) and the continued risk to their SPI, which remains in Defendant's control, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class members' SPI.

137.    Plaintiffs and Class members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

138.    Plaintiffs and Class members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class members.

### THIRD CLAIM FOR RELIEF
**Breach of Fiduciary Duty**
**(By Plaintiffs Individually and on Behalf of the Class)**

139.    Plaintiffs hereby re-allege and incorporate by reference all of the allegations in paragraphs 1 to 103.

140.    Plaintiffs and Class members have an interest, both equitable and legal, in the SPI about them that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

141.   As a recipient of consumers' SPI, Defendant has a fiduciary relationship to Plaintiffs and the Class members.

142.   Because of that fiduciary relationship, Defendant was provided with and stored private and valuable SPI related to Plaintiffs and the Class and Subclass. Plaintiffs and the Class were entitled to expect their information would remain confidential while in Defendant's possession.

143.   Defendant owed a fiduciary duty under common law to Plaintiffs and Class members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their SPI in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

144.   As a result of the parties' fiduciary relationship, Defendant had an obligation to maintain the confidentiality of the information within Plaintiffs' and the Class members' records.

145.   Defendant had possession and knowledge of confidential SPI of Plaintiffs and Class members, information not generally known.

146.   Plaintiffs and Class members did not consent to nor authorized Defendant to release or disclose their SPI to unknown criminal actors.

147.   Defendant breached its fiduciary duties owed to Plaintiffs and Class members by, among other things:

a.   mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of SPI;

b.    mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

c.    failing to design and implement information safeguards to control these risks;

d.    failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures;

e.    failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

f.    failing to detect the breach at the time it began or within a reasonable time thereafter;

g.    failing to follow its own privacy policies and practices published to its customers and employees; and

h.    failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive SPI.

148.    But for Defendant's wrongful breach of its fiduciary duties owed to Plaintiffs and Class members, their SPI would not have been compromised.

149.    As a direct and proximate result of Defendant's negligence, Plaintiffs and Class members have suffered injuries, including:

a.    Theft of their SPI;

b.    Costs associated with the detection and prevention of identity theft and unauthorized use of their SPI;

c.    Costs associated with purchasing credit monitoring and identity theft protection services;

d.  Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.  Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.  The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their SPI being placed in the hands of criminals;

g.  Damages to and diminution in value of their SPI entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiffs' and Class members' data against theft and not allow access and misuse of their data by others;

h.  Continued risk of exposure to hackers and thieves of their SPI, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class members' data; and

i.  Emotional distress from the unauthorized disclosure of SPI to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiffs and Class

members.

150.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiffs and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**Breach of Confidence**
**(By Plaintiffs Individually and on Behalf of the Class)**

151.    Plaintiffs hereby re-allege and incorporate by reference all of the allegations in paragraphs 1 to 103.

152.    Plaintiffs and Class Member have an interest, both equitable and legal, in the SPI about them that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

153.    Plaintiffs and Class members provided Defendant with their personal and confidential SPI under both the express and/or implied agreement of Defendant to limit the use and disclosure of such SPI.

154.    Defendant owed a duty to Plaintiffs and Class members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting the SPI in its possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons.

155.    Plaintiffs' and Class members' SPI is not generally known to the public and is confidential by nature.

156.    Plaintiffs and Class members did not consent to nor authorize Defendant to release or disclose their SPI to unknown criminal actors.

157.    Defendant breached the duties of confidence it owed to Plaintiffs and Class members when their SPI was disclosed to unknown criminal hackers.

158.    Defendant breached its duties of confidence by failing to safeguard Plaintiffs' and Class members' SPI, including by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of SPI; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to its customers; (h) storing SPI in an unencrypted and vulnerable manner, allowing its disclosure to hackers; and (i) making an unauthorized and unjustified disclosure and release of Plaintiffs' and Class members' SPI to a criminal third party.

159.    But for Defendant's wrongful breach of its duty of confidences owed to Plaintiffs and Class members, their privacy, confidences, and SPI would not have been compromised.

160.    As a direct and proximate result of Defendant's breach of Plaintiffs' and Class members' confidences, Plaintiffs and Class members have suffered injuries, including:

a.  The erosion of the essential and confidential relationship between Defendant and Plaintiffs and Class members as parties that were subject to the business relationship;

b.  Theft of their SPI;

c.  Costs associated with the detection and prevention of identity theft and unauthorized use of their SPI;

d.  Costs associated with purchasing credit monitoring and identity theft protection services;

e.  Lowered credit scores resulting from credit inquiries following fraudulent activities;

f.  Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

g.  The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their SPI being placed in the hands of criminals;

h.  Damages to and diminution in value of their SPI entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiffs' and Class members' data against theft and not allow

access and misuse of their data by others;

i.    Continued risk of exposure to hackers and thieves of their SPI, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class members' data; and

j.    Loss of personal time spent carefully reviewing financial and medical statements to check for charges for services not received.

161.   Defendant breached the confidence of Plaintiffs and Class members when it made an unauthorized release and disclosure of their confidential information and, accordingly, it would be inequitable for Defendant to retain the benefit at Plaintiffs' and Class members' expense.

162.   As a direct and proximate result of Defendant's breach of its duty of confidences, Plaintiffs and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment, in the Alternative**
**(By Plaintiffs Individually and on Behalf of the Class)**

163.   Plaintiffs hereby re-allege and incorporate by reference all of the allegations in paragraphs 1 to 103.

164.   Plaintiffs and Class members conferred a monetary benefit upon Defendant in the form of storing their SPI with in such a way that saved expense and labor for Defendant.

165.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and Class members. Defendant also benefited from the receipt of Plaintiffs' and Class members' SPI, as this was used by Defendant to facilitate its core functions.

166.    The benefits given by Plaintiffs and Class members to Defendant were to be used by Defendant, in part, to pay for or recoup the administrative costs of reasonable data privacy and security practices and procedures.

167.    As a result of Defendant's conduct, Plaintiffs and Class members suffered actual damages in an amount to be determined at trial.

168.    Under principles of equity and good conscience, Defendant should not be permitted to retain a benefit belonging to Plaintiffs and Class members because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiffs and Class members granted to Defendant or were otherwise mandated by federal, state, and local laws and industry standards.

169.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class members all unlawful or inequitable proceeds or benefits it received as a result of the conduct alleged herein.

### SIXTH CLAIM FOR RELIEF
### The California Consumer Privacy Act, Calif. Civil Code § 1798.100
### (By Plaintiff Robert Crist Individually and on Behalf of the California Subclass)

170.    Plaintiff hereby re-alleges and incorporates by reference all of the allegations in paragraphs 1 to 103.

171.    Plaintiff Crist and California Subclass Members are "consumer[s]" as that

term is defined in Cal. Civ. Code § 1798.140(g) because they are natural persons and California residents.

172.    Defendant is a "business" as that term is defined in Cal. Civ. Code § 1798.140(c) because, on information and belief, it has annual gross revenue exceeding $25 million and it buys, receives, sells, and shares personal information of 50,000 or more consumers, households, or devices.

173.    The Plaintiffs' and Class members' SPI is "nonencrypted and nonredacted personal information" consisting of social security number, names, addresses and other sensitive personal information. Cal. Civ. Code § 1798.150(a)(1). The Data Breach constitutes "an unauthorized access and exfiltration, theft, or disclosure" pursuant to Cal. Civ. Code § 1798.150(a)(1) because due to Defendant's failure to implement reasonable and necessary security measures, they enabled third party criminals to access personal information and thus, caused unauthorized sharing of Plaintiffs' and the Class members' personal information.

174.    Defendant had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of Plaintiffs' and Class members' SPI to protect said SPI.

175.    Defendant breached the duty they owed to Plaintiff and Subclass Members described above. Defendant breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the SPI of the Plaintiff and Subclass Members; (b) detect the breach while it was ongoing; and (c) maintain security systems consistent with industry standards.

176.    Defendant's breach of the duty it owed to Plaintiff and the Subclass Members described above was the direct and proximate cause of the Data Breach. As a result, Plaintiff and the Subclass Members suffered damages, as described above and as will be proven at trial

177.    Plaintiff and the Subclass Members seek injunctive relief in the form of an order enjoining the Defendant from continuing the practices that constituted their breach of the duty owed to Plaintiff and Subclass Members as described above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class and Subclass Members, request judgment against the Defendant and the following:

A.    An Order certifying the Class and Subclass as defined herein, and appointing Plaintiffs and their counsel to represent the Class and Subclass;

B.    Equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and the Class members' SPI;

C.    An award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

D.    An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

E.    Pre- and post-judgment interest on all amounts awarded; and

F.    Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: July 8, 2025

Respectfully submitted,

*/s/ David A. Goodwin*
Daniel E. Gustafson (MN Bar #0202241)
David A. Goodwin (MN Bar #0386715)
Joshua J. Rissman (MN Bar #0391500)
Joe E. Nelson (MN Bar #0402378)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
jrissman@gustafsongluek.com
jnelson@gustafsongluek.com

Carl V. Malmstrom (MN #0391908)
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

Bryan L. Bleichner (MN #0326689)
Philip J. Krzeski (MN #0403291)
**CHESTNUT CAMBRONNE PLLC**
100 Washington Ave. S., Suite 1700
Minneapolis, MN 55401
(612) 339-7300
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

Marc H. Edelson (*pro hac vice*)
Liberato P. Verderame (*pro hac vice*)
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N300

Newtown, PA 18940
Telephone: (215) 867-2399
medelson@edelson-law.com
lverderame@edelson-law.com

*Interim Co-Lead Counsel for Plaintiffs
and the Proposed Class*