## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| *In re Eisner Advisory Group* *Data Breach Litigation* | Civil Action No. 0:25-cv-01409-LMP-DTS |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    PLAINTIFFS' FACTUAL ALLEGATIONS .......................................................... 1

III.   CHOICE OF LAW ............................................................................................... 4

IV.    PLAINTIFFS' CLAIMS ARE SUBJECT TO DISMISSAL FOR FAILING TO
       STATE VALID CLAIMS FOR RELIEF ................................................................ 6

       A.     Plaintiffs Have Failed to State a Claim for Negligence (First Claim) .......... 7

              1.     Failure to Sufficiently Plead Damages ................................................. 8

              2.     Failure to Sufficiently Allege Causation .......................................... 11

       B.     Plaintiffs Failed to State a Claim for Breach of Third-Party Beneficiary
              Contract (Second Claim) ............................................................................. 12

       C.     Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty (Third Claim)
              ................................................................................................................... 15

       D.     Plaintiffs Fail to State a Claim for Breach of Confidence (Fourth Claim) . 18

       E.     Plaintiffs Failed to State a Claim for Unjust Enrichment (Fifth Claim) ..... 19

       F.     Plaintiff Crist Fails to State a Claim for Violation of the California Consumer
              Privacy Act (Sixth Claim) .......................................................................... 21

V.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR INJUNCTIVE OR
       DECLARATORY RELIEF .................................................................................. 24

VI.    IN THE ABSENCE OF DISMISSAL OF THE COMPLAINT IN ITS ENTIRETY,
       IMPERTINENT AND IMMATERIAL ALLEGATIONS SHOULD BE
       STRICKEN FROM THE COMPLAINT .............................................................. 25

VII.   CONCLUSION .................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allstate Ins. Co. v. Hague*,
449 U.S. 302 (1981) ........................................................... 5

*Alvarez v. Becerra*,
No. 21-2317, 2023 WL 2908819 (4th Cir. Apr. 12, 2023) ........................................ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................ 6, 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007) ........................................................ 6, 7

*Berry v. Crescent Cmty. Health Ctr.*,
2025 WL 1287909 (N.D. Iowa May 2, 2025) ........................................ 10, 20

*Broek v. Park Nicollet Health Servs.*,
660 N.W.2d 439 (Minn. App. 2003) .............................................. 8

*Buchman Plumbing Co. v. Regents of the Univ. of Minnesota*,
298 Minn. 328 (1974) ...................................................... 12

*Burger v. Healthcare Mgmt. Sols., LLC*,
No. 23-1215, 2024 WL 473735 (D. Md. Feb. 7, 2024) ................................. 11

*C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*,
60 F.4th 1144 (8th Cir. 2023) ................................................ 4

*Carlson v. SALA Architects, Inc.*,
732 N.W.2d 324 (Minn. Ct. App. 2007) ......................................... 16

*D.A.B. v. Brown*,
570 N.W.2d 168 (Minn. App. 1997) ............................................ 16

*Doe v. Virginia Mason Medical Center*,
2024 WL 3517759 (Wash. Super. June 06, 2024) .................................. 19

*Durell v. Sharp Healthcare*,
108 Cal. Rptr. 3d 682 (2010) ................................................. 21

*Everhart v. Colonial Pipeline Co.*,
  No. 21-3559, 2022 WL 3699967 (N.D. Ga. July 22, 2022) ......................................... 10

*Flores*,
  2023 IL App (1st) 230140 ............................................................................................... 19

*Forbes v. Wells Fargo Bank, N.A.*,
  420 F. Supp. 2d 1018 (D. Minn. 2006) ......................................................................... 8, 9

*Gacek v. Owens & Minor Distribution, Inc.*,
  2010 WL 11534509 (D. Minn. Feb. 3, 2010) .................................................................. 26

*Gallagher v. Magner*,
  2005 WL 8186700 (D. Minn. Oct. 28, 2005) .................................................................. 26

*Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*,
  703 F.3d 1104 (8th Cir. 2013) ................................................................................... 12, 13

*Gilman & Bedigan, LLC v. Sackett*,
  337 F.R.D. 113 (D. Md. 2020) ........................................................................................ 26

*Gjovik v. Bemidji Loc. Bus Lines*,
  27 N.W.2d 273 (Minn. 1947) .......................................................................................... 12

*Guin v. Brazos Higher Education Service Corp., Inc.*,
  2006 WL 288483 (D. Minn. Feb. 7, 2006) ....................................................................... 8

*Hager v. Arkansas Dep't of Health*,
  735 F.3d 1009 (8th Cir. 2013) ....................................................................................... 6, 7

*Hall*,
  2023 WL 3435100 .......................................................................................................... 25

*Harris v. Mercy Health Network, Inc.*,
  2024 WL 5055556 (S.D. Iowa June 26, 2024) ............................................................... 17

*Hayes v. Automation Personnel Services, Inc.*,
  No. 21-00859, 2022 WL 22913918 (N.D. Ala. Sept. 27, 2022) .................................... 10

*Hoffmann Elec. Co. v. Undlin*,
  2000 WL 1869556 (Minn. Ct. App. Dec. 26, 2000) ...................................................... 18

*Holmes v. Elephant Ins. Co.*,
2023 WL 4183380 (E.D. Va. June 26, 2023) ............................................................... 11

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ................................................................ 22, 23

*In re Arthur J. Gallagher*,
631 F. Supp. 3d (collecting cases) ............................................................................ 19

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
674 F. Supp. 3d 884 (S.D. Cal. 2023) ...................................................................... 22

*In re Brinker Data Incident Litig.*,
No. 18-686, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020) .......................................... 19

*In re Group Health Plan Litigation*,
709 F.Supp.3d 707 (D. Minn. 2023) ......................................................................... 18

*In re Nat'l Hockey League Players' Concussion Inj. Litig.*,
327 F.R.D. 245 (D. Minn. 2018) ............................................................................ 4, 5

*In re SuperValu, Inc. Customer Data Sec. Breach Litig.*,
No. 14-2586, 2018 WL 1189327 (D. Minn. Mar. 7, 2018) ................................... 10, 15

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019) ............................................................................. 14, 20

*In re Target Corp. Customer Data Sec. Breach Litig.*,
309 F.R.D. 482 (D. Minn. 2015) ................................................................................. 5

*In re Target Corp. Data Sec. Breach Litig.*,
66 F. Supp. 3d ........................................................................................................ 19

*In re: Netgain Tech., LLC*,
2022 WL 1810606 (D. Minn. June 2, 2022) ............................................................ 7, 8

*Kuhns v. Scottrade, Inc.*,
868 F.3d 711 (8th Cir. 2017) ............................................................................. 14, 15

*Lackie v. Minnesota State University Student Association*,
2025 WL 416764 ..................................................................................................... 25

*Leonard v. McMenamins Inc.*,
  No. 22-0094, 2024 WL 4188974 (W.D. Wash. Sept. 13, 2024*)* ................................... 11

*Maag v. U.S. Bank, Nat'l Ass'n*,
  2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) ................................................................ 22

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ................................................................................................ 24

*N. Nat. Bank of Bemidji v. N. Minnesota Nat. Bank of Duluth*,
  70 N.W.2d 118 (1955) ................................................................................ 12, 13, 14

*Negron v. Ascension Health*,
  2025 WL 2710014 (E.D. Mo. Sep. 23, 2025) ............................................................ 10

*Papasan v. Allain*,
  478 U.S. 265 (1986) .................................................................................................. 7

*Perry v. Bay & Bay Transportation Servs., Inc.*,
  650 F. Supp. 3d 743 (D. Minn. 2023) ................................................................. 12, 13

*Petta v. Christie Business Holding Company, P.C.*,
  2023 IL App (5th) 220742, ¶ 23 ............................................................................. 11

*Ransom v. VFS, Inc.*,
  918 F. Supp. 2d 888 (D. Minn. 2013) ............................................................ 16, 17, 18

*Reisdorf v. i3, LLC*,
  129 F. Supp. 3d 751 (D. Minn. 2015) ...................................................................... 15

*Roper v. Rise Interactive Media & Analytics, LLC*,
  2023 WL 7410641 (N.D. Ill. Nov. 9, 2023) ............................................................... 20

*Shema v. Thorpe Bros.*,
  240 Minn. 459, 62 N.W.2d 86 (1953) ...................................................................... 17

*Swenson v. Bender*,
  764 N.W.2d 596 (Minn. Ct. App. 2009) ............................................................... 15, 16

*Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*,
  756 N.W.2d 907 (Minn. Ct. App. 2008) ................................................................... 16

*Toombs v. Daniels*,
   361 N.W.2d 801 (Minn.1985) ................................................................ 16

*Udo v. Wells Fargo Bank, N.A.*,
   2023 WL 8600791 (N.D. Cal. Dec. 12, 2023) ...................................... 22

*United States v. State of Minn.*,
   113 F. Supp. 488 (D. Minn. 1953) ...................................................... 14

*United States v. Thompson*,
   728 F.3d 1011 (9th Cir. 2013) ............................................................ 22

**Statutes**

28 U.S.C. § 2201 ...................................................................................... 24

28 U.S.C. § 2202 ...................................................................................... 24

Cal. Civ. Code § 1798.150(a)(1) ............................................................. 21

Cal. Civ. Code § 1798.150(b) .............................................................. 21, 23

Calif. Civil Code §1798.100 ................................................................. 4, 6

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................. 1, 6

Federal Rule of Civil Procedure 12(f) ................................................ 26, 27

**Other Authorities**

Wright & Miller, Fed. Prac. & Proc. § 1382 ........................................... 26

Defendant Eisner Advisory Group LLC ("Eisner" or "Defendant") submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (ECF No. 19) ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.    INTRODUCTION

Eisner was the victim of a cyberattack.  Plaintiffs Christopher Niosi, Ryan Hiatt, Andrew Marston, Robert Crist, and Rebbeca L. Lemmons ("Plaintiffs") allege that they received notice from Eisner that their personal information may have been accessed during that cyberattack.  However, that fact alone does not establish a claim, and Plaintiffs have failed to plead sufficient factual information to establish the requisite elements of any of the asserted causes of action.  Plaintiffs further fail to adequately plead actual harm attributable to either the data security incident or, more specifically, Eisner.  Each of these Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6).

## II.    PLAINTIFFS' FACTUAL ALLEGATIONS[1]

According to the Complaint, "Eisner is a full-service accounting and auditor [firm] that does business as EisnerAmper…[with] offices throughout the United States, including one in Minneapolis."  Compl. ¶¶ 1, 20.  On or around September 9, 2023, Eisner became aware of unauthorized access to its systems and launched an investigation into the nature

---

[1] For the purposes of this motion only, all well-pleaded facts of the Complaint are treated as true.  However, Defendants do not admit to the truth of any allegations in the Complaint and cite them here solely for the purposes of this motion.

and scope of the suspicious activity (the "Incident"). *Id.* at ¶¶ 22-23. Eisner subsequently issued notification letters to potentially impacted individuals, including each of the named Plaintiffs, on April 8, 2025, which stated that certain information was accessed and taken by an unauthorized third-party unknown actor ("threat actor").[2] *Id.* at ¶¶ 14-18, 62, 68, 75, 81, 87.

Beyond these facts, Plaintiffs offer only boilerplate allegations regarding potential injury based on invasion of privacy, lost or diminished value of their information, mitigation efforts, lost time, loss of benefit of the bargain, and increased risk to their information, as well as anxiety, emotional distress, and loss of privacy. *Id.* at ¶¶ 10, 66, 71-72, 78-80, 84-86 90-92. Indeed, instead of pleading facts related to the Plaintiffs injury or damages, a large portion of Plaintiffs' Complaint includes generalizations related to other data incidents and security protocols, statistics from various websites, and opinions from the internet about data incidents. *See id.* at ¶¶ 31-33, 38-61.

In an attempt to bolster their weak claims, Plaintiffs allege they believe, without any factual basis, that information potentially impacted in this Incident was "…taken by hackers to engage in identity theft or and or [*sic*] to sell it to other criminals who will purchase the [PII] for that purpose." *Id.* at ¶ 34. Plaintiffs all allege they have experienced an increase in spam communications since the time of the Incident, but without any statements attributing the receipt of spam emails to the Incident. *Id.* at ¶¶ 70, 77, 83, 89.

---

[2] Plaintiffs Niosi, Hiatt, Marston and Crist allege that they do not know how Defendant acquired Plaintiffs' PII. *Id.* at ¶¶ 63, 69, 76, 82. However, Plaintiff Lemmons contends that "[she] has learned that a law firm that she used was working with Defendant, which is how Defendant acquired [her] PII." *Id.* at ¶ 88.

Plaintiffs also allege they experienced some misuse of their information, which they attribute to the Incident based solely on allegations of temporal proximity. For example: (1) Niosi alleges that "[o]n September 5, 2023, [he] discovered that an unknown individual had fraudulently opened a credit card with his name…" and made unauthorized charges with the card (*id.* at ¶ 64); (2) Hiatt and Marston both contend that since the Incident, they "…ha[ve] received a large number of spam emails attempting to get [them] to apply for various loans," (*id.* at ¶¶ 70, 77); (3) Crist and Lemmons both allege receipt of "a large number of spam emails," since the Incident, without saying what kind of spam e-mails (*id.* at ¶ 83, 89). None of the Plaintiffs have alleged any specific unreimbursed economic harm traceable to the Incident. Although Plaintiff Niosi alleges unauthorized charges, the Complaint explains that the card was closed and his credit was restored. *Id.* at ¶ 65. In addition, the Complaint generally offers no factual allegations as to how these purported injuries are related to the Incident or Defendants other than ostensibly the timing of the events and the fact that their Social Security numbers and email addresses were potentially exposed.[3]

Plaintiffs seek to represent a nationwide class of "[a]ll natural persons residing in the United States whose [PII] was compromised in the [Incident] announced by Defendant on or about April 8, 2025." Compl. ¶ 93. Plaintiff Crist further seeks to represent a subclass

---

[3] It appears that the Complaint includes a specific allegation of temporal proximity only with respect to Plaintiff Niosi. Compl. at ¶¶ 67. Plaintiff Hiatt states that he "is aware of no other source from which the theft of his [PII] could have come." *Id.* at ¶ 74. There are no similar allegations for the other named Plaintiffs, except for the language "since the time of the [Incident]…". *Id.* at ¶¶ 70, 77, 83, 89.

for California residents defined as "[a]ll individuals residing in the State of California whose [PII] was compromised in the [Incident] announced by Defendant on or about April 8, 2025." *Id.* at ¶ 94.

Based on wholly speculative and conclusory allegations, the Complaint asserts causes of action for (1) negligence; (2) breach of third-party beneficiary contract; (3) breach of fiduciary duty; (4) breach of confidence; (5) unjust enrichment; and (6) Violation of the California Consumer Privacy Act, Calif. Civil Code §1798.100. Compl. ¶¶ 104-177.

## III.    CHOICE OF LAW

The Complaint potentially impacts the laws of various jurisdictions: (1) Minnesota, where Plaintiffs Niosi and Marston are residents, and where the underlying events related to the Incident took place; (2) Montana, where Plaintiff Hiatt is a resident; (3) California, where Plaintiff Crist is a resident; (4) Florida, where Plaintiff Lemmons is a resident; and (5) New York, where Defendant is headquartered.  As addressed below, the applicable law is Minnesota.

"According to long-settled precedent, a federal court sitting in diversity borrows the forum State's choice-of-law rule." *C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 60 F.4th 1144, 1148 (8th Cir. 2023), cert. denied, 144 S. Ct. 190 (2023).  "Minnesota uses a three-step choice of law analysis.  The first two steps inquire whether differing state laws present an outcome-determinative conflict and whether each law constitutionally may be applied to the case at hand." *In re Nat'l Hockey League Players' Concussion Inj. Litig.*, 327 F.R.D. 245, 258 (D. Minn. 2018) (internal quotation and citation omitted).  "At the

4

third step, the Court decides whether the rule of law at issue is substantive or procedural." *Id.* "If the issue is substantive, the Court applies a multi-step choice-of-law analysis, which includes application of five choice-influencing considerations, to determine which state's law applies." *Id.* "However, if the issue is procedural, then Minnesota applies its own law." *Id.* With respect to a class action, "[t]o apply Minnesota law to a non-resident plaintiff's claims, the Constitution requires that Minnesota have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 486 (D. Minn. 2015) (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981)).

In the data breach context, the Court in *In re Target Corp.* "…presume[d] there [we]re substantive conflicts between the laws of Plaintiffs' home states and Minnesota law and still [found it was] constitutional [to] apply Minnesota law." *See id.* at 486 ("Minnesota's contacts with this action are legion: [the defendant] is headquartered in Minnesota; its computer servers are located in Minnesota; the decisions regarding what steps to take or not take to thwart malware were made in large part in Minnesota…[t]hese contacts are sufficient to allow application of Minnesota law to the claims of non-Minnesota class members without offending either the Due Process Clause or the Full Faith and Credit Clause.").

Plaintiffs' Complaint purports to set forth causes of action for negligence (Count I), breach of third-party beneficiary contract (Count II), breach of fiduciary duty (Count III), breach of confidence (Count VI); unjust enrichment (Count V); and Violation of the

California Consumer Privacy Act, Calif. Civil Code § 1798.100 (Count VI). The Complaint also asserts that "[w]hile Eisner has offices around the country and is headquartered in New York City, Eisner's general counsel has publicly identified the Minneapolis office as being the office responsible for the [Incident]." Compl. at ¶ 4. The Complaint does not indicate a location of contracting for plaintiff's breach of third-party beneficiary contract claim.

For purposes of this motion, Defendants will analyze the tort and contractual claims under Minnesota law.[4]

## IV.    PLAINTIFFS' CLAIMS ARE SUBJECT TO DISMISSAL FOR FAILING TO STATE VALID CLAIMS FOR RELIEF

In order to survive a motion to dismiss under Rule 12(b)(6), "[a] complaint must state a claim to relief that is plausible on its face." *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)) (internal quotation omitted). The complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

---

[4] A putative class action lawsuit arising out of the same Incident that forms the basis of this action is pending in the Southern District of New York. In Re Eisner Advisory Group LLC Data Breach Litigation, 1:25-cv-03044-MMG (S.D.N.Y.). For reasons consistent with those set forth in this Memorandum of Law, Plaintiffs' claims also fail under New York law.

"[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). For a claim to be "plausible on its face," the plaintiff must plead sufficient factual allegations to "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570). "Courts should dismiss complaints based on labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Hager*, 735 F.3d at 1013 (citing *Twombly*, 550 U.S. at 555). Plaintiffs have not alleged facts sufficient to properly state any of their asserted causes of action.

## A.    Plaintiffs Have Failed to State a Claim for Negligence (First Claim)

Plaintiffs have failed to properly plead their negligence cause of action. "A negligence claim requires a plaintiff to allege a duty, breach, causation, and injury." *In re: Netgain Tech., LLC*, 2022 WL 1810606, at *8 (D. Minn. June 2, 2022) (citation omitted). "Under Minnesota law, an individual has a duty to act with reasonable care for the protection of others' in two situations." *Id.* at *10 (citation and quotation omitted). "First, general negligence law imposes a general duty of reasonable care when the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." *Id.* "[A] duty arises when there is a special relationship between the defendant and the plaintiff and an action by someone other than the defendant creates a foreseeable risk of harm to the plaintiff." *Id.* "Minnesota courts have considered the following factors when determining whether a defendant owed a duty of care in a general negligence case: (1) the foreseeability

of harm to the plaintiff, (2) the connection between the defendant's conduct and the injury suffered, (3) the moral blame attached to the defendant's conduct, (4) the policy of preventing future harm, and (5) the burden to the defendant and community of imposing a duty to exercise care with resulting liability for breach." *Id.* at *11.

### 1.  Failure to Sufficiently Plead Damages

Even if a duty and resulting breach have been sufficiently pled, Plaintiff does not sufficiently plead damages. In Minnesota, negligence law "does not compensate the mere possibility of harm." *Broek v. Park Nicollet Health Servs.*, 660 N.W.2d 439, 443-44 (Minn. App. 2003) (citation omitted).  Consequently, Plaintiffs' boilerplate and speculative assertions regarding increased risk of future farm do not suffice to allege the damages necessary to state a claim for negligence.

In *Guin v. Brazos Higher Education Service Corp., Inc.*, 2006 WL 288483 (D. Minn. Feb. 7, 2006), a laptop with borrower data was stolen from one of defendant's employees.  The defendant advised borrowers that the data on the laptop included their personal information, including "name, address, social security number and loan balance." *Id*. at *2.  But the plaintiff had "experienced no instance of identity theft or any other type of fraud involving his personal information."  *Id*. at *6.  Quoting the Minnesota Supreme Court for the principle that "[t]he threat of future harm, not yet realized, will not satisfy the damage requirement," the Court held that the plaintiff had failed to show the requisite injury to sustain a claim for negligence, and granted summary judgment for the defendant. *Id*. at *5.  In *Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1020-21 (D. Minn. 2006), the plaintiffs asserted a claim for negligence under Minnesota law and argued that

"the time and money they have spent monitoring their credit suffices to establish damages." On motion for summary judgment the court disagreed, finding that the plaintiffs "overlook[ed] the fact that their expenditure of time and money was not the result of any present injury, but rather the anticipation of future injury that has not materialized. *Id.* at 1021. In other words, the plaintiffs' injuries are solely the result of a perceived risk of future harm." *Id.*

In this matter, Plaintiffs offer boilerplate allegations regarding potential injury based on invasion of privacy, lost or diminished value of their information, mitigation efforts, lost time, loss of benefit of the bargain, and increased risk to their information, as well as anxiety, emotional distress, and loss of privacy. *Id.* at ¶¶ 10, 66, 71-72, 78-80, 84-86 90-92. Although Plaintiff Niosi has asserted an allegation regarding unauthorized charges on a credit card, he fails to allege any actual damages, and he concedes that his credit was restored. Compl. ¶ 65. Otherwise, Plaintiffs do not allege any ongoing, present damages resulting from Eisner's purported negligence such as stolen identity or unreimbursed fraudulent charges, and their unspecific allegations of injury based on "a perceived risk of future harm" are insufficient to plead the damages element of a negligence claim. *Forbes*, 420 F.Supp.2d at 1021. Also, in Minnesota, "…a plaintiff can only recover for loss of time in terms of earning capacity or wages." *Id.* at 1020-21.

Several Plaintiffs contend they've received spam emails since the incident, or (as discussed below) how such spam email caused injury to Plaintiffs. Compl. ¶¶ 70, 77, 83, 89. However, Plaintiffs do not provide allegations which would explain how this particular Incident caused increased spam, given an email address may be obtained from "any number

of sources." *C.f. Negron v. Ascension Health*, 2025 WL 2710014 at *6 (E.D. Mo. Sep. 23, 2025) ("To the extent Plaintiffs claim lost time or nuisance as a result of spam, the Court finds the connection to this data breach too speculative to establish standing entitling Plaintiffs to any form of relief."); *see also Berry v. Crescent Cmty. Health Ctr.,* 2025 WL 1287909, at *5 (N.D. Iowa May 2, 2025) (even though the Eighth Circuit has found that increased spam calls can qualify as an injury in a data breach case, "[p]laintiff has not alleged facts, however, that would allow the inference to be drawn that the spam calls he received has anything to do with the dat[a] breach."). Although one named Plaintiff has alleged a single instance of fraudulent banking activity, this appears to have been remedied, and nothing but temporal proximity is alleged as potentially linking the Incident to this activity. Compl. ¶¶ 65-67.

Additionally, there are no allegations of unreimbursed economic harm traceable to the Incident in the Complaint. *See, Everhart v. Colonial Pipeline Co*., No. 21-3559, 2022 WL 3699967, at *2 (N.D. Ga. July 22, 2022) (finding a data breach plaintiff failed to state a negligence claim because (i) diminished value of PII, (ii) out-of-pocket mitigation expenses, (iii) lost opportunity costs, and (iv) increased risk to PII are not "legally cognizable injuries for which damages may be recoverable for a tort such as negligence"); *see also Hayes v. Automation Personnel Services, Inc.*, No. 21-00859, 2022 WL 22913918, at *20 (N.D. Ala. Sept. 27, 2022) (finding that plaintiffs failed to state a claim for negligence when plaintiffs failed to allege any facts about the pecuniary loss they incurred); *In re SuperValu, Inc. Customer Data Sec. Breach Litig.,* No. 14-2586, 2018 WL 1189327,

at *13 (D. Minn. Mar. 7, 2018) (dismissing negligence claim where "time spent monitoring his account information to guard against potential fraud" was not a "cognizable injury").

### 2. Failure to Sufficiently Allege Causation

Plaintiffs further have failed to allege that the Incident proximately caused their alleged damages. Their conclusory allegations that the Incident caused an increase in spam communications and unauthorized bank activity ultimately confuse "correlation with causation." *Burger v. Healthcare Mgmt. Sols., LLC*, No. 23-1215, 2024 WL 473735, at *6 (D. Md. Feb. 7, 2024) (quoting *Alvarez v. Becerra*, No. 21-2317, 2023 WL 2908819, at *3 (4th Cir. Apr. 12, 2023)). Courts have found that such conclusory statements fail to establish a connection to the underlying data security incident. *Holmes v. Elephant Ins. Co.*, 2023 WL 4183380, at *6 (E.D. Va. June 26, 2023), *reversed on other grounds*, 156 F.4th 413 (4th Cir. 2025). "This is especially true" when the facts cannot establish a connection between the purported damages and the leaked data at issue. *Burger*, 2024 WL 473735, at *6 (finding that there was no traceability where there was an allegation of an increase in spam emails without allegations that the plaintiff's email address was disclosed); *see also Petta v. Christie Business Holding Company, P.C.*, 2023 IL App (5th) 220742, ¶ 23 (declining standing—a higher burden than seen here for negligence— because the plaintiffs failed to allege any facts concerning how the publication of his email address, which could not be used for any financial misuse, has harmed the plaintiff in any way); *Leonard v. McMenamins Inc.*, No. 22-0094, 2024 WL 4188974, at *7-8 (W.D. Wash. Sept. 13, 2024*), appeal filed*, No. 24-6333 (9th Cir.) (finding that the plaintiffs' allegations of spam communications and fraud attempts were insufficient to support a negligence claim

because the plaintiffs did not allege or explain how those purported harms were connected to the information potentially taken in the data breach).

**B.    Plaintiffs Failed to State a Claim for Breach of Third-Party Beneficiary Contract (Second Claim)**

Plaintiffs' second claim for relief alleges breach of third-party beneficiary contract. Compl. ¶¶ 131-138. "Breach of Third-Party Beneficiary Contract" does not appear to be an independent cause of action in Minnesota, and is instead a theory or doctrine under which a plaintiff may assert a claim for breach of contract. *See, e.g., Buchman Plumbing Co. v. Regents of the Univ. of Minnesota*, 298 Minn. 328, 331-36 (1974) (describing breach of contract claim brought under third-party beneficiary contract theory). "A successful breach-of-contract claim under Minnesota law has four elements: (1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013) (internal citation and quotation omitted). "Under the common law of Minnesota, contracts of any sort can be implied in fact and can be oral or written." *Perry v. Bay & Bay Transportation Servs., Inc.*, 650 F. Supp. 3d 743, 757 (D. Minn. 2023). "If the plaintiff seeks to recover on the theory that the contract was one for a third-party beneficiary, the allegations must be sufficient to show that the contract was intended to benefit him directly and that he was not merely an incidental beneficiary." *Gjovik v. Bemidji Loc. Bus Lines*, 27 N.W.2d 273, 274 (Minn. 1947). "To come within the rule, a third party must be either a donee beneficiary or a creditor beneficiary." *N. Nat. Bank of Bemidji v. N. Minnesota Nat. Bank of Duluth*, 70

N.W.2d 118, 123 (1955) (internal citation omitted). "A creditor beneficiary is defined as one to whom the promisee owes or is believed to owe a duty which is discharged by the promisor's performance," whereas "[a] donee beneficiary is one to whom the promisee intends to make a gift of the performance by the promisor." *Id.* at 123-24.

Plaintiffs claim that Eisner "entered into contracts with its corporate customers to provide services to them; services that included data security practices, procedures, and protocols sufficient to safeguard the [PII] that was entrusted to it." Compl. at ¶ 132. Plaintiffs assert that these purported contracts "were made expressly for the benefit of Plaintiffs and the Class and Subclass, as it was their [PII] that [Eisner] agreed to receive, store, utilize, transfer, and protect through its services." *Id.* at ¶ 133. Plaintiffs' Complaint does not provide allegations sufficient to establish the existence of any underlying predicate contract, so Plaintiffs cannot sustain a claim under a third-party beneficiary theory.

Additionally, Plaintiffs do not in any way discuss the performance of the contract by the contracting parties, mentioning only Eisner's alleged breach. *See*, *e.g.*, Compl. ¶ 135. The allegations of the Complaint do not serve to satisfy the second element of the predicate breach of contract claim, namely "performance by plaintiff of any conditions precedent." *Gen. Mills Operations, LLC*, 703 F.3d at 1107. The caselaw indicates that "…an intent to be contractually bound is determined by the objective manifestations of the parties' words, conduct, and documents, and not by their subjective intent." *Perry*, 650 F. Supp. 3d at 757 (internal citation and quotation omitted). Plaintiffs do not even name the entities with which Eisner allegedly contracted. The Complaint does not indicate there was

ever a meeting of the minds which delineated the terms of any contract. *See In re SuperValu*, *Inc.*, 925 F.3d 955, 965-66 (8th Cir. 2019). Plaintiff's claim for breach of third-party beneficiary contract fails because the Complaint does not sufficiently describe the predicate contracting behavior of the parties.

Plaintiffs claim that Eisner acquired Plaintiffs' PII in the course of entering into implied contracts with unidentified corporate entity customers, whereby Eisner promised to protect Plaintiffs through adequate data security measures. *See* Compl. ¶¶ 132, 135. This position has been squarely rejected by Courts in the data breach context. For example, as the Eighth Circuit has explained, "[t]he implied premise that because data was hacked [the defendant's] protections must have been inadequate is a naked assertion devoid of further factual enhancement that cannot survive a motion to dismiss." *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017).

Plaintiffs here have not provided or cited to any written contract, or sufficiently described an implied contract, from which the Court could ascertain the promisor-promisee relationship between the parties in a manner sufficient to apply the third-party beneficiary doctrine. Only one of the Plaintiffs allegedly identifies their potential connection with Eisner, as the Complaint states Plaintiff Lemmons obtained services from a law firm that was working with Eisner. Compl. ¶¶ 18, 88. The Complaint does not identify how Plaintiff Lemmons would be an "creditor beneficiary" with the right of contractual enforcement, or a beneficiary at all. *Id.*; *N. Nat. Bank of Bemidji*, 70 N.W.2d at 123-124; *see also United States v. State of Minn.*, 113 F. Supp. 488, 495 (D. Minn. 1953) ("A stranger to the contract, even though he will benefit from the performance of the parties, is merely an incidental

beneficiary unless the parties thereto have expressed an intention to benefit him, or, in other words, have expressed an intention to create in the stranger a right to enforce the contract.") (citation omitted).

Lastly, Plaintiffs fail to plausibly allege that they suffered any cognizable damages arising out of the alleged breach. *Kuhns*, 868 F.3d at 718; *In re Supervalu, Inc.*, 2018 WL 1189327 at *15. The only named Plaintiff that alleged fraudulent activity as a result of the Incident does not allege any actual damages and acknowledges that his credit was restored. *See* Compl. ¶ 65. The Complaint does not specifically provide allegations regarding actual loss on the part of any of the named Plaintiffs. Plaintiffs have therefore failed to establish the damages element of a breach of contract claim.

### C.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty (Third Claim)

Plaintiffs' third claim for relief alleges breach of fiduciary duty. Plaintiffs' claim for breach of fiduciary duty appears to be a conclusory restatement of Plaintiffs' claim of negligence. Even if the two Counts were pleaded with sufficient distinction, Plaintiffs have not established the existence of a fiduciary relationship between themselves and Defendant.

To prevail on a claim for breach of fiduciary duty in Minnesota, "a plaintiff must show: (1) the existence of a fiduciary duty; (2) a breach of that duty; (3) causation; and (4) damages." *Reisdorf v. i3, LLC*, 129 F. Supp. 3d 751, 767 (D. Minn. 2015) (internal citation omitted). A plaintiff must establish that he or she and the defendant were in a fiduciary relationship and that the defendant breached a duty arising from that relationship. *See Swenson v. Bender*, 764 N.W.2d 596, 601 (Minn. Ct. App. 2009). A fiduciary relationship

is "characterized by a 'fiduciary' who enjoys a superior position in terms of knowledge and authority and in whom the other party places a high level of trust and confidence." *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 897 (D. Minn. 2013) (quoting *Swenson*, 764 N.W.2d at 601). "Such a relationship transcends the ordinary business relationship which, if it involves reliance on a professional, surely involves a certain degree of trust and a duty of good faith and yet is not classified as 'fiduciary.' Minnesota has declined to classify even the physician-patient relationship as fiduciary." *Carlson v. SALA Architects*, *Inc.*, 732 N.W.2d 324, 331 (Minn. Ct. App. 2007) (citing *D.A.B. v. Brown,* 570 N.W.2d 168, 172 (Minn. App. 1997)).

Minnesota recognizes two categories of fiduciary relationships: those that are per se and those that are de facto. Per se fiduciary relationships are those that automatically give rise to a fiduciary relationship, such as trustees and beneficiaries, attorneys and clients, general partners and limited partners, and directors or officers and corporations. *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 914 (Minn. Ct. App. 2008). A de facto fiduciary relationship is a fact-dependent inquiry; "evidence of financial control, assurances and invited consequences, and disparities in business experience may be sufficient to show the existence of such a relationship." *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 897 (D. Minn. 2013) (citing *Toombs v. Daniels,* 361 N.W.2d 801, 809 (Minn.1985)). Although the Complaint does not specifically state as much, Plaintiffs are most likely attempting to establish a de facto fiduciary relationship. Nevertheless, a fiduciary relationship is not established where parties transact business at

arm's length.  *Ransom*, 918 F. Supp. 2d at 897 (citing *Shema v. Thorpe Bros.,* 240 Minn. 459, 62 N.W.2d 86, 91 (1953)).

Even if Plaintiffs had sufficiently described the relationship between themselves and Eisner, Plaintiffs would still not be able to establish a fiduciary duty under the facts as alleged.  Although there do not appear to be decisions regarding breach of fiduciary duty in the data breach context in the District of Minnesota, the Southern District of Iowa recently reviewed Court decisions throughout the country in *Harris v. Mercy Health Network, Inc.,* 2024 WL 5055556, at *13 (S.D. Iowa June 26, 2024).  This matter involved a direct relationship between the plaintiffs and the defendant that had suffered a data breach but nevertheless concluded that no fiduciary duty existed.  The court explained as follows:

> …[F]iduciary relationships typically arise only when one party exercises domination or influence over the other in a way that is atypical of a business relationship. Here, when it comes to medical advice or treatment, [the plaintiff] plausibly has such a relationship with [the defendant] and its physicians; indeed, his desire for medical advice or treatment is presumably why he went to [the defendant] in the first place.  He did not, however, go to [the defendant] for advice regarding the protection of his personal information, nor could he plausibly allege that [the defendant] exercised atypical domination or influence over him as to that issue.  Instead, the protection of his personal information was a corollary part of his relationship with [the defendant] for which the parties operated at arms-length.  No fiduciary duty exists in such circumstances.

*Harris,* 2024 WL 5055556, at *13.

In the matter before the Court, the Plaintiffs do not allege any direct relationship with Eisner, let alone a relationship that could constitute a fiduciary relationship.  Rather, the Complaint merely asserts that Eisner acquired Plaintiffs' PII.  *See, e.g.*, Compl. ¶ 141.

Plaintiffs fail to allege that Eisner exhibited any sort of "financial control, assurances and invited consequences, [or] disparities in business experience." *Ransom*, 918 F. Supp. 2d at 897. The mere possession of an individual's PII does not create a fiduciary relationship. Plaintiffs' claim for breach of fiduciary duty is subject to dismissal.

> ### D. Plaintiffs Fail to State a Claim for Breach of Confidence (Fourth Claim)

Plaintiffs' fourth claim purports to set forth a claim for breach of confidence. However, this cause of action is not recognized in Minnesota. *See In re Group Health Plan Litigation*, 709 F.Supp.3d 707, 716-17 (D. Minn. 2023) (dismissing breach of confidence claim with prejudice, as "…[p]laintiffs [failed to] demonstrate Minnesota courts have affirmatively recognized a common law 'breach of confidence' claim of the sort alleged here."). At most, "breach of confidence," as understood in Minnesota is a term of art which refers to a set of facts which could be used to constitute a claim, for example, for "attorney breach of attorney fiduciary duty," or is otherwise understood to refer to a claim which sounds in defamation and/or invasion of privacy. It is not its own separate cause of action. *See, e.g., Hoffmann Elec. Co. v. Undlin,* 2000 WL 1869556, at *4 (Minn. Ct. App. Dec. 26, 2000); *In re Group Health Plan*, 709 F.Supp.3d at 716.

Similar to *In re Group Health Plan Litigation*, the Complaint in this matter alleges a "general breach of confidence" claim "based on [Eisner's] alleged disclosure of Plaintiffs' [PII]." 709 F.Supp.3d at 716. Accordingly, Plaintiffs' breach of confidence claim is subject to dismissal.

### E.    Plaintiffs Failed to State a Claim for Unjust Enrichment (Fifth Claim)

Plaintiffs assert a claim for unjust enrichment as their fifth claim for relief.  Because Defendants have not unjustly retained a benefit to Plaintiffs' detriment, this claim fails and should be dismissed. "The substantive law of unjust enrichment is consistent across all jurisdictions: Plaintiffs must plead that [the defendant] knowingly received or obtained something of value which it 'in equity and good conscience' should not have received." *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d at 1177.

Courts have "routinely rejected the proposition that an individual's personal identifying information has an independent monetary value" that constitutes a benefit for purposes of unjust enrichment.  *In re Arthur J. Gallagher*, 631 F. Supp. 3d at 592 (collecting cases) (citation omitted); *Flores,* 2023 IL App (1st) 230140, ¶ 38 ("[P]laintiffs' personal information was not the payment for defendant's insurance services."); *In re Brinker Data Incident Litig.*, No. 18-686, 2020 WL 691848, at *11 (M.D. Fla. Jan. 27, 2020) (dismissing unjust enrichment claim where plaintiffs failed to show plaintiffs conferred a benefit on defendant); *Doe v. Virginia Mason Medical Center*, 2024 WL 3517759, at *7(Wash. Super. June 06, 2024) ("Plaintiff's failure to place any value on that benefit, or any information about how much Facebook or Google paid for this data," warranted dismissal of the unjust enrichment claim).

Plaintiffs allege that "Plaintiffs and Class members conferred a monetary benefit upon Defendant in the form of storing their [PII] in such a way that saved expense and labor for Defendant," and "Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and Class members…benefit[ing] from the receipt of

Plaintiffs' and Class members' [PII], as this was used by Defendant to facilitate its core functions." Compl. ¶¶ 164-65. Aside from Plaintiff Lemmons, the named Plaintiffs do not provide allegations which establish what relationship Plaintiffs had, if any, with Eisner. Plaintiff Lemmons asserts that she "learned that a law firm that she used was working with Defendant, which is how Defendant acquired Plaintiff's [PII]." Compl. ¶ 88. This allegation fails to support an assertion that Plaintiff Lemmons paid Eisner for something she did not receive. At best, the Complaint describes merely part of a process through which Eisner received Plaintiff's personal information in the context of providing certain services to the law firm allegedly used by Plaintiff Lemmons. Ultimately, the Complaint does not contend Plaintiffs paid for a service they did not receive.

Nor do Plaintiffs specifically allege that Eisner acted "inequitably," which is another requirement of an unjust enrichment claim. *In re SuperValu,* 925 F.3d at 966 (an Eighth Circuit case in the data privacy context, finding no inequitable retention because plaintiff "did not pay a premium for a side order of data security and protection") (citation omitted); *accord Berry v. Crescent Cmty. Health Ctr.*, 2025 WL 1287909, at *10 (N.D. Iowa May 2, 2025) (finding no unjust enrichment where "there [we]re no allegations about a specific portion of plaintiff's contribution that went towards data protection."). After all, it is the "third-party hackers, not Defendants, . . . who benefitted from the Data Breach," meaning that Eisner was not enriched by the Incident. *Roper v. Rise Interactive Media & Analytics, LLC,* 2023 WL 7410641, at *6 (N.D. Ill. Nov. 9, 2023). Likewise, the Complaint contains no allegation establishing that any Plaintiffs made any payments to Eisner, nor how they were made, nor their amount. As such, Plaintiffs never conferred any monetary benefits to

Defendants.  It is respectfully submitted that Count V of the Complaint must be dismissed for failure to state a claim.[5]

### F.    Plaintiff Crist Fails to State a Claim for Violation of the California Consumer Privacy Act (Sixth Claim)

Plaintiff Robert Crist, individually and on behalf of the putative California subclass, asserts a claim for violation of the California Consumer Privacy Act ("CCPA").  To state a claim under the CCPA, a "consumer" must plausibly allege that his personal information was "[1] subject to an unauthorized access and exfiltration, theft, or disclosure as a result of [2] the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information."  Cal. Civ. Code § 1798.150(a)(1).  A consumer must provide a business 30 days' written notice identifying the specific provisions the consumer alleges to have been violated to bring a CCPA violation.  Cal. Civ. Code § 1798.150(b).

Plaintiff alleges that the information at issue constitutes personal information and that Defendant failed to implement data security practices adequate to safeguard such information, thereby enabling criminal third-party access to the personal information. Compl. ¶¶ 173-176.  However, Plaintiff fails to plead sufficient facts to show that the Incident occurred "as a result of [Eisner's] duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information."  Cal. Civ. Code § 1798.150(a)(1).  The Complaint's conclusory and boilerplate allegations center on

---

[5] In addition, "[t]here is no cause of action in California for unjust enrichment."  *Durell v. Sharp Healthcare,* 108 Cal. Rptr. 3d 682, 699 (2010) (collecting cases).  California Plaintiff Robert Crist's unjust enrichment claim also fails on this basis.

Defendant's purported failure to implement security standards without consideration or explanation of how such failures would have prevented the Incident. Courts applying this statute require more. *See In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 916 (S.D. Cal. 2023) (dismissing a CCPA claim based on defendant allegedly storing personal information in an inadequately secure manner because allegations only suggested "a possibility that inadequately secure . . . storage may be the reason [plaintiff's] data was stolen"); *Udo v. Wells Fargo Bank, N.A.*, 2023 WL 8600791, at *3 (N.D. Cal. Dec. 12, 2023) (dismissing CCPA claim that "simply recites the elements of the statute"). Courts have dismissed claims similar to Plaintiff's claim under the CCPA. *See Maag v. U.S. Bank, Nat'l Ass'n*, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claims when a plaintiff failed to allege any facts to support the notion that defendant's security was deficient). To allow a claim over this Incident to survive would turn the CCPA into a strict liability scheme. "[W]henever possible, '[courts must] interpret statutes so as to preclude absurd results.'" *United States v. Thompson,* 728 F.3d 1011, 1018 (9th Cir. 2013). As such, this claim should be dismissed.

Plaintiff's CCPA claim further fails because the Complaint does not provide sufficient allegations to establish that Eisner meets the CCPA's definition of "business." "The CCPA provides a limited civil cause of action" only related to a "business's violation of the duty to implement and maintain reasonable security procedures." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 640 (N.D. Cal. 2024). "Accordingly, to qualify as a 'business' under the CCPA, the entity must both (1) collect PII and (2) determine why and how ('the purposes and means') the PII should be processed. *Id.* In

this matter, the Complaint fails to set forth how "[Eisner] decides or 'determines' with respect to processing Plaintiffs' PII." *In re Accellion, Inc.*, 713 F.Supp.3d at 641. The Complaint alleges that "[i]n the ordinary course of doing business, Defendant *collects* [PII] from its clients (generally the employers of individuals whose [PII] is collected)." Compl. ¶ 21 (emphasis added). However, the Complaint does not include allegations from which one could understand "…whether [Eisner] *determined* how and why Plaintiffs' PII was transmitted." *In re Accellion Inc.*, 713 F.Supp.3d at 641 (emphasis in original). "Without any allegations as to what [Eisner] decides or 'determines' with respect to processing Plaintiffs' PII, the Court cannot find that the Complaint has alleged that [the defendant] is a 'business' for the purposes of the CCPA." *Id.* Plaintiff therefore cannot sustain a claim for violation of the CCPA.

Additionally, Plaintiff Crist failed to provide the required 30 days' written notice identifying the specific provisions alleged to have been violated in advance of filing suit. *See* Cal. Civ. Code § 1798.150(b) (Actions pursuant to this section may be brought by a consumer if, prior to initiating any action against a business for statutory damages on an individual or class-wide basis, a consumer provides a business 30 days' written notice identifying the specific provisions of this title the consumer alleges have been or are being violated."). Plaintiff filed his original Complaint on April 17, 2025 without first providing the requisite written notice. *See Crist et al v. EisnerAmper LLP et al*, 0:25-cv-01573 (D. Minn). As a result, Plaintiff is foreclosed from seeking statutory damages on an individual or class-wide basis, pursuant to Cal. Civ. Code § 1798.150(b).

## V.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR INJUNCTIVE OR DECLARATORY RELIEF

In several areas of the Complaint, Plaintiffs appear to seek injunctive or declaratory relief.  *See* Compl. ¶¶ 102, 103(e), 138, 177.  The relief requested ostensibly consists of measures to improve Defendants' data security, while also seeking "adequate" credit monitoring.  *See, e.g., id.* at ¶ 138 ("Plaintiffs and Class members are also entitled to injunctive relief requiring Defendant to, e.g ., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class members.").  To the extent Plaintiffs seek declaratory and/or injunctive relief, their claim fails because the Complaint does not allege any forward-looking future harm which would establish injunctive relief as a remedy.

The Declaratory Judgment Act ("DJA") allows a court, in the case of an actual controversy, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."  28 U.S.C. § 2202.  To state a claim for relief under the DJA, a plaintiff must adequately allege a dispute that is: (1) "definite and concrete, touching the legal relations of parties having adverse legal interests"; (2) "real and substantial"; and (3) "admit[ting] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127

(2007); *accord Hall*, 2023 WL 3435100 at *4 (in the data breach context, "[f]or [Plaintiffs] to have standing to pursue this relief, [they are] required to show that [they] face[] a sufficiently imminent and substantial risk of future harm…") (internal citation omitted).

Plaintiffs have not identified an impending future harm where "forward-looking" injunctive relief would prevent any such harm.   The requested relief relates to improvements to Eisner's current data security, which would have no impact on a breach that has already occurred.   "There is, for example, no suggestion that [Eisner] is currently being targeted by hackers, or that something about their operations makes them uniquely vulnerable to incursions," and "[n]othing in [Plaintiffs'] pleading transforms the *possibility* that [Eisner] might suffer another data breach into an imminent or substantial risk."   *Hall*, 2023 WL 3435100 at *4 (emphasis in original).   Moreover, to the extent Plaintiffs request any form of "retrospective declaratory relief," such relief is not permitted in the Eighth Circuit.   *See Lackie v. Minnesota State University Student Association*, 2025 WL 416764 at *3 ("…granting retrospective declaratory relief directly conflicts with the Eighth Circuit's holding that declaratory relief is limited to *prospective* declaratory relief") (emphasis in original, internal citation and quotation omitted).   Plaintiffs have therefore failed to state a claim for declaratory or injunctive relief.

## VI.   IN THE ABSENCE OF DISMISSAL OF THE COMPLAINT IN ITS ENTIRETY, IMPERTINENT AND IMMATERIAL ALLEGATIONS SHOULD BE STRICKEN FROM THE COMPLAINT

If the Court does not dismiss the Consolidated Complaint in its entirety, it is respectfully requested that the Court strike immaterial and impertinent allegations

concerning identity theft that pertain to neither the parties nor facts of this case. Federal Rule of Civil Procedure 12(f) permits a court to strike immaterial and impertinent allegations from a pleading on its own or upon motion by a party. *See* Fed. R. Civ. P. 12(f). "In addition to those express purposes set forth in the text of the rule, Rule 12(f) also is designed to reinforce the requirement in Rule 8(e) that pleadings be simple, concise, and direct." *Gallagher v. Magner*, 2005 WL 8186700, at *2 (D. Minn. Oct. 28, 2005) (internal quotation and citation omitted).

"…[A] district court enjoys liberal discretion in considering whether to strike matter from a pleading…" *Id.; accord Gacek v. Owens & Minor Distribution, Inc.*, 2010 WL 11534509, at *2 (D. Minn. Feb. 3, 2010) (internal citation omitted). "…[A] portion of a pleading may be stricken as 'redundant,' when it is essentially a repetition of another claim in the same pleading…while an allegation is considered 'immaterial,' or 'impertinent,' when it is neither responsive, nor relevant, to the issues involved in the action." *Gacek*, 2010 WL 11534509 at *2 (internal citation omitted); *accord Gilman & Bedigan, LLC v. Sackett*, 337 F.R.D. 113, 117 (D. Md. 2020) (citing Wright & Miller, Fed. Prac. & Proc. § 1382) (a court should grant a motion under Rule 12(f) when "the challenged allegations have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party.") Instead of focusing on the relevant data security incident and their individual experiences, Plaintiffs have loaded the Complaint with extraneous material concerning the actions of identity thieves and statistics or general information about cybercrime or cybersecurity. *See* Compl. ¶¶ 31-33, 38-61.

Plaintiffs have pled no facts regarding the purported motivations of the cybercriminals who executed the attack on Defendants.  These immaterial and generalized allegations are designed to improperly inflame the issues and lend weight to the alleged risk of future identity theft.  Plaintiffs should limit the Complaint to the alleged Incident and their individual experiences, and the Court should strike paragraphs 33 and 38-61 pursuant to Rule 12(f).

## VII.  CONCLUSION

For all of the foregoing reasons, Defendant Eisner Advisory Group LLC respectfully request that the Court grant its motion and dismiss Plaintiffs' Consolidated Class Action Complaint with prejudice.

Dated: December 22, 2025

Respectfully submitted,

*/s/ Daniel M. Braude*
Daniel M. Braude (admitted pro hac vice)
Mullen Coughlin LLC
411 Theordore Fremd Avenue, Suite 206S
Rye, NY 10580
(267) 930-1316
dbraude@mullen.law

William L. Davidson, #201777
Ryan C. Ellis, #0386661
Lind, Jensen, Sullivan & Peterson
A Professional Association
901 Marquette Avenue South, Suite 1900
Minneapolis, MN 55402
(612) 333-3637
william.davidson@lindjensen.com
ryan.ellis@lindjensen.com

**Attorneys for Defendant**

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel M. Braude, state that on December 22, 2025, I filed a true and correct copy of Defendant Eisner Advisory Group, LLC's Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint Pursuant to Rule 12(B)(6) via the Court's electronic filing system, which caused a copy to be served on all counsel of record.

*/s/ Daniel M. Braude*

**<u>CERTIFICATE PURSUANT TO LR 7.1(f) AND LR 7.1(h)</u>**

I, Daniel M. Braude, certify that the foregoing Memorandum of Law contains 7,560 words as determined by the Word Count function (configured to include all text, including heading, footnotes and quotations) within Microsoft Word contained within Microsoft Office 365 Version 2511, Build 19426.20218, and therefore complies with LR 7.1(c).

I further certify that the foregoing Memorandum of Law is set in font size 13, including footnotes, with double-spaced text except for headings, footnotes and quotations more than two lines long, and that it is formatted for all text to appear within an area measuring 6 1/2 by 9 inches.

*/s/ Daniel M. Braude*