**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IN RE EISNER ADVISORY GROUP DATA BREACH LITIGATION

Case No. 25-cv-01409 (LMP/DTS)

**ORDER APPROVING CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

---

Raina C. Borrelli, **Strauss Borrelli PLLC, Chicago, IL**; Philip J. Krzeski, Bryan L. Bleichner, and Elizabeth A. Orrick, **Chestnut Cambronne PA, Minneapolis, MN**; William B. Federman, **Federman & Sherwood, Oklahoma City, OK**; and Daniel E. Gustafson, David A. Goodwin, Joshua J. Rissman, and Joe E. Nelson, **Gustafson Gluek PLLC**, **Minneapolis, MN**, for Plaintiffs.

Claudia D. McCarron and Jordan S. O'Donnell, **Mullen Coughlin LLC, Devon, PA**; and William L. Davidson and Ryan C. Ellis, **Lind, Jensen, Sullivan & Peterson, PA, Minneapolis, MN**, for Defendant.

Lead Plaintiffs and Class Representatives Christopher Niosi, Andrew Marston, Robert Crist, Rebecca L. Lemmons, Ryan Hiatt, David Fallen, Chris Ouellette, Hannah Watzka, and Timothy Rushing (collectively "Plaintiffs") brought this class action lawsuit alleging claims against Defendant Eisner Advisory Group LLC ("Eisner") arising out of a data breach. *See generally* ECF No. 55. The parties reached a settlement, which the Court has already preliminarily approved, ECF No. 66, and Plaintiffs now move for final approval of that settlement, ECF No. 72. Plaintiffs also move for an award of attorneys' fees, expenses, and service awards for the Class Representatives. ECF No. 68. Defendants

do not oppose the motions, *see* ECF Nos. 70 and 75, and class members have not objected. For the following reasons, the motions are granted.

**BACKGROUND**

Eisner is a "full-service accounting and auditor" that provides tax and business consulting to clients. ECF No. 55 ¶ 1. In its ordinary course of business, Eisner collects sensitive personal information ("SPI") from clients and the employees of clients, such as social security numbers and other governmental identity, demographic, health, and bank account information. *Id.* ¶ 27. Eisner assured clients that it would maintain such SPI securely. *Id.* ¶¶ 28–31. But in September 2023, Eisner's Minneapolis office was the victim of a data breach, which resulted in the theft of the SPI of more than 80,000 individuals. *Id.* ¶¶ 2–4. Eisner did not publicly disclose the data breach until April 8, 2025, meaning that affected individuals were not notified for more than 18 months that their SPI had been exposed. *Id.* ¶¶ 32, 35. Various plaintiffs brought class action complaints shortly thereafter, and the Court consolidated the actions and appointed interim class counsel on May 27, 2025. *See generally* ECF No. 18. Plaintiffs filed a consolidated amended complaint on July 8, 2025. ECF No. 19.

On July 9, 2025, the parties jointly requested a stay while they engaged in private mediation, ECF No. 20, which the Court granted, ECF No. 22. That initial mediation proved unsuccessful, and Eisner moved to dismiss on December 22, 2025. ECF No. 30. Plaintiffs filed a response on January 28, 2026. ECF No. 40. But on February 12, 2026, the parties jointly moved to extend the remaining briefing because the parties were again engaged in settlement discussions, ECF No. 44, which the Court granted, ECF No. 46.

On March 12, 2026, the parties told the Court that they had reached a settlement. ECF No. 47. And on May 13, 2026, Plaintiffs filed a motion for preliminary approval of the settlement. ECF No. 61, *see also* ECF No. 63-1 (the "Settlement"). Under the Settlement, Eisner would deposit $1,050,000 into a non-reversionary fund to be used to provide benefits to the class. Individual class members can apply for up to $5,000 for documented losses, an estimated $100 pro-rata payment, and two years of credit monitoring and identity theft insurance. ECF No. 62 at 2–3; ECF No. 63-1 ¶¶ 48, 66. The Court preliminarily approved the settlement and set a final approval hearing for October 13, 2026. ECF No. 66.

Plaintiffs now move for final approval of the settlement, ECF No. 72, and for attorneys' fees, expenses, and service awards, ECF No. 68. Plaintiffs represent that beginning on July 10, 2026, the Settlement Administrator sent notice by mail or email of the settlement to 85,080 potential class members, with additional efforts made at providing notice to those class members whose initial notices were not deliverable. ECF No. 78 ¶¶ 7–8. The Settlement Administrator also gave notice by posting the settlement agreement, class notice, and claim form to a publicly available website. *Id.* ¶ 12. The Settlement Administrator represents that notice under the Class Action Fairness Act ("CAFA") was served on all relevant authorities no later than July 6, 2026. *Id.* ¶ 3; *see also* ECF No. 67. The deadline for objections was September 9, 2026. ECF No. 66 at 10. Neither the Court nor the Settlement Administrator received any objections, but the Settlement Administrator received three requests to be excluded from the Settlement. ECF No. 78 ¶¶ 17–18. To date, 6,457 individuals have submitted timely claims. *Id.* ¶ 13.

The Court held a final fairness hearing on October 13, 2026, at which Plaintiffs' counsel discussed why the settlement was fair, reasonable, and adequate, and why Plaintiffs' motion for attorneys' fees, expenses, and service awards should be granted. ECF No. 80.

## ANALYSIS

### I. Certification of the Settlement Class

This Court provisionally granted class certification, and defined the proposed class as:

> All persons who were affected by the Data Incident, including but not limited to those who were sent a notice letter by Eisner concerning the Data Incident discovered in September of 2023.

ECF No. 66 at 2. The Court also provisionally certified a California Subclass as:

> Members of the Settlement Class, as previously defined, within California.

*Id.* And excluded from the Class:

> (i) Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over this matter and members of their immediate families and their judicial staff; (iii) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; (iv) the attorneys representing the Settling Parties in the Action; and (v) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident, or who pleads nolo contendere to any such charge.

*Id.*

As for final approval, class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. A district court may not certify a class until it "is satisfied, after a

rigorous analysis," that Rule 23(a)'s certification prerequisites are met and at least one of the provisions of Rule 23(b) are satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (citation modified); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). These requirements remain mandatory in the settlement context. *See Kruger v. Lely N. Am., Inc.*, No. 20-cv-629 (KMM/DTS), 2023 WL 5665215, at *2 (D. Minn. Sept. 1, 2023).

Here, a close review of the materials submitted in support of the unopposed motion, and other relevant materials in the case file, shows that the proposed settlement class satisfies the prerequisites of Rule 23(a) and Rule 23(b)(3), making certification for the purposes of settlement appropriate.

**a. Rule 23(a)**

Rule 23(a) provides that a class action may be maintained if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements—numerosity, commonality, typicality, and adequacy of representation—are met here.

**i. Numerosity**

There are several relevant factors pertaining to the numerosity inquiry with the most obvious being the size of the proposed class. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982). In this case, the number of potential settlement class members is greater than 80,000. ECF No. 78 ¶¶ 7–10. In total, 6,547 claims were timely and valid.

*Id.* ¶ 14. Of those, 5,376 class members selected cash settlement and 1,909 selected credit monitoring. *Id.* As a matter of size, this satisfies the numerosity requirement. *See Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 944 (D. Minn. 2018) (explaining that a putative class size of at least 40 members generally supports a finding of numerosity).

**ii. Commonality**

Commonality "requires a showing that class members have suffered the same injury." *Powers v. Credit Mgmt. Servs.*, 776 F.3d 567, 571 (8th Cir. 2015) (citation modified). To satisfy commonality, the class members' "claims must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. There is no requirement, however, "that every question of law or fact be common to every member of the class," and commonality may be satisfied, for example, "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton*, 688 F.2d at 561 (citation modified).

Here, multiple questions of law or fact are common to the class, including whether Eisner's data security practices were deficient, whether Eisner was aware of the deficiency, and whether Eisner owed a duty of care to Plaintiffs. *See, e.g.*, *In re Netgain Tech., LLC*, No. 21-cv-1210 (SRN/LIB), 2025 WL 3063288, at *4 (D. Minn. Nov. 3, 2025) (commonality met in data-breach case because claims of "implementation and maintenance of inadequate data security measures would be determined by [defendant's] actions or inactions, and whether that conduct allowed the Data Breach to occur"); *Morrison v.*

*Entrust Corp.*, No. 23-cv-415 (ECT/ECW), 2024 WL 2207563, at *4 (D. Minn. May 14, 2024) (same).

**iii. Typicality**

The typicality requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff[s]." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). This case stems from a singular data breach in September 2023. ECF No. 55 at ¶ 2. Here, whatever factual variations might exist between individual plaintiffs are minor and are far outweighed by the common issues presented by each individual plaintiff. *See Morrison*, 2024 WL 2207563, at *4 (typicality met where "grievances reflect typical injuries associated with a data breach and the disclosure of sensitive personal information").

**iv. Adequacy of Representation**

To demonstrate adequacy of representation, a plaintiff must show that: "(1) the representative and [his] attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012). This inquiry requires the Court "to evaluate the adequacy of both the proposed class

representatives and the proposed class counsel." *Taqueria El Primo LLC v. Ill. Farmers Ins. Co.*, 577 F. Supp. 3d 970, 993 (D. Minn. 2021).

As for the first requirement, Class Representatives have been active participants in this case by contacting counsel, researching similar data-breach incidents, helping counsel formulate a settlement strategy, responding to discovery, and attending appointments with counsel. *See, e.g.*, ECF No. 71-3 ¶ 6; *see also* ECF Nos. 71-4–71-10. The Court is persuaded that Plaintiffs and their counsel have competently and vigorously litigated this matter.

As for the second requirement, there is no evidence in the record suggesting Plaintiffs' interests diverge from those of other settlement class members, and all settlement class members stand to benefit equally from the monetary and nonmonetary relief offered by the settlement. *See Farmington Hills Emps. Ret. Sys.*, 281 F.R.D. at 354. The Court recognizes and appreciates Eisner's commitment to enhancing their data security to protect the sensitive personal information of their clients in the future. ECF No. 71 at 7. In sum, the Court finds the requirements of Rule 23(a) satisfied.

**b. Rule 23(b)(3)**

The Court must next determine whether Plaintiffs' proposed settlement class falls into one of the three categories of Rule 23(b). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**i. Predominance**

At the core of Rule 23(b)(3)'s predominance requirement "is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence . . . . If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (citation modified). "An individual question is one on which evidence varies from member to member; a common question is one where the same evidence suffices for each member to make a *prima facie* showing." *Ford v. TD Ameritrade Holding Corp.*, 115 F.4th 854, 859 (8th Cir. 2024).

"By their nature, data breach claims ordinarily involve many plaintiffs who allege to have suffered equivalent injuries resulting from the breach." *Morrison*, 2024 WL 2207653, at *5; *see also In re Netgain Tech., LLC*, 2025 WL 3063288, at *5 ("All of the issues related to negligence—duty, breach, causation and damages—can be resolved on a class-wide basis."). This case stems from a singular data breach in September 2023. As a result, predominance is met here.

**ii. Superiority**

A class action must also be superior to other methods of adjudication to be certified under Rule 23(b)(3). This requirement is easily met here, as in most data-breach class actions, because litigation of "the same claims of hundreds of thousands of class members and requiring the presentation of the same evidence and expert opinions each time is clearly inefficient," and "many Settlement Class members are individuals who would receive

relatively small awards." *In re Netgain Tech., LLC*, 2025 WL 3063288, at *5; *Morrison*, 2024 WL 2207653, at *5.

In sum, because common questions predominate over individual questions and because a class action is a superior method of adjudicating this action, the Court finds that class certification is proper under Rule 23(b)(3). The Court approves the class.

## II. Final Approval of the Settlement

Having certified the class, the Court also finds that the notice program carried out by the parties satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Due Process Clause, and CAFA. *See* ECF No. 67; ECF No. 78 ¶¶ 3–12; *see also id.* at 14–15. Therefore, the only question left is whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this assessment, the Court considers the *Van Horn* factors: (1) the merits of Plaintiffs' case weighed against the terms of the settlement; (2) Defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (citing *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)).

The Court also considers the factors enumerated in Rule 23(e)(2). *See Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 860–61 (S.D. Iowa 2020); *Barclay v. iFIT Health & Fitness, Inc.*, No. 19-cv-2970 (ECT/DJF), 2025 WL 3004039, at *9 (D. Minn. Oct. 27, 2025). Under Rule 23(e)(2), courts consider whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class

members equitably relative to each other. A settlement agreement is "presumptively valid." *Uponor*, 716 F.3d at 1063 (citation modified).

**a. *Van Horn* Factors**

**i. Merits of Plaintiffs' Case vs. the Terms of the Settlement**

This factor, which is the "most important," *Van Horn*, 840 F.2d at 607, requires consideration of "Plaintiffs' likelihood of success in litigation" and "the range of successful outcomes," *Barclay*, 2025 WL 3004039, at *9.

Plaintiffs' likelihood of success here was by no means guaranteed, as "data breach cases are still relatively new, and courts around the country are still grappling with what legal principles apply to the claims." *In re Netgain Tech., LLC*, 2025 WL 3063288, at *6; *see also In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-cv-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015) (noting that the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues"). Plaintiffs faced an immediate motion to dismiss and would surely have faced additional meritorious dispositive motions down the line. Weighed against that reality, the Settlement is a good result and allows Plaintiffs immediate and certain monetary relief and prospective relief in the form of identify-theft protections. *Id.* This factor favors approving the Settlement.

**ii. Defendant's Financial Condition**

No party disputes Eisner's ability to pay for its settlement obligations. This factor is therefore neutral in the Court's analysis. *See Huyer v. Njema*, 847 F.3d 934, 939 (8th Cir.

2017) (finding this factor neutral because it was undisputed that defendant's "financial condition was stable").

### iii. Complexity and Expense of Further Litigation

"The benefits of the settlement must also be weighed against the potential cost of achieving a better result at trial." *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1100 (D. Minn. 2009). Plaintiffs of course believe they have a strong claim, but Eisner's Rule 12(b)(6) motion exposed weaknesses. And even if Plaintiffs succeeded in the early stages, there is no "doubt further litigation would have proven complex and expensive" where "the case by its nature would have been heavy on electronic discovery, associated nondispositive motion practice, and eventually more dispositive motion practice." *Morrison*, 2024 WL 2207563, at *6. The settlement strikes an appropriate balance where Eisner avoids any admission of liability, and the class gets certain relief while both sides eliminate the risks of future litigation.

### iv. Opposition to the Settlement

On July 10, 2026, the Settlement Administrator sent notice of the settlement to 85,080 potential class members, with additional efforts made at providing notice to those class members whose initial notices were deemed undeliverable. ECF No. 78 ¶ 7. In total, the Settlement Administrator estimates the notice was successfully delivered to 90.31% of the class members. *Id.* ¶ 11. The Court has received no objections to the settlement, which strongly supports settlement approval. *See Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1080, 1083 (D. Minn. 2009) (finding this factor "strongly support[ed]

settlement approval" when no objections were made by the more than 23,000 class members).

**b. Rule 23(e)(2) Factors**

Having found that the *Van Horn* factors support approving the settlement, the Court also finds that the Rule 23(e)(2) factors support the settlement. As described above, the Class Representatives and Class Counsel adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The parties also reached the settlement agreement after meeting with a mediator, providing for arm's-length negotiation and avoiding any risk of collusion. *See* Fed. R. Civ. P. 23(e)(2)(B); *see also Barclay*, 2025 WL 3004039, at *13 (finding this factor weighed in favor of a settlement when the parties had negotiated at arm's length through a mediator); *Isbell v. Polaris, Inc.*, No. 22-cv-1322 (WMW/DJF), 2023 WL 6662980, at *2 (D. Minn. Oct. 12, 2023) ("Courts have held that negotiations involving counsel and a mediator, like the present case, raise a presumption of reasonableness."). Settlement avoids the risks, expenses, uncertainties, and delays of continued litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). The proposed method of distribution and processing claims is effective, and the notice was effectively delivered. *See* ECF No. 78 ¶¶ 3–11; *see also* Fed. R. Civ. P. 23(e)(2)(C)(ii). And the Settlement treats class members equitably relative to each other, as class members are all entitled to benefit from the monetary payment and non-monetary protections provided for the in Settlement. *See* ECF No. 63-1 ¶¶ 48, 66; *see also* Fed. R. Civ. P. 23(e)(2)(D). Both the *Van Horn* and Rule 23(e)(2) factors favor approving the parties' settlement, and the Court accordingly finds the settlement fair, reasonable, and adequate. The Court approves the settlement.

## III. Request for Attorneys' Fees

Class Counsel also seek attorneys' fees under the "common-fund" or "percentage of the recovery" doctrine. ECF No. 71 at 4. Under the common-fund doctrine, "class counsel is entitled to a reasonable fee drawn from the commonly-held fund created by a settlement for the benefit of a class." *Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781 (SRN/JSM), 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Generally, the "reasonable fee" is calculated by awarding a percentage of the settlement fund as attorneys' fees. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).

Here, Class Counsel seek 33.33 percent of the $1.05 million settlement fund—or approximately $350,000—in attorneys' fees. ECF No. 71 at 1. This is within a presumptively reasonable range. *In re Resideo Techs., Inc., Sec. Litig.*, No. 19-cv-2863 (WMW/BRT), 2022 WL 872909, at *6 (D. Minn. Mar. 24, 2022) ("Courts in this Circuit routinely have awarded attorneys' fees ranging from 25 percent to 36 percent of a common fund."). But the Court still must assess the fees' reasonableness and weigh seven factors: (1) the benefit conferred on the class; (2) the risk to which Class Counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both of Class Counsel and Defendant's attorneys; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases. *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010). Ultimately, the "determination of a reasonable fee is a wide-ranging inquiry that seeks to account for a variety of case-specific

circumstances." *In re T-Mobile Customer Data Sec. Breach Litig.*, 111 F.4th 849, 860 (8th Cir. 2024).

**a. Benefit to the Class**

Class Counsel's efforts have brought about a modest monetary recovery to the class—$1.05 million total with roughly $100 pro rata cash payments to each class member. But, as noted above, it is a settlement reached early before the case faced most of the risks involved with litigation. What's more, class members are eligible to receive up to $5,000 for out-of-pocket expenses incurred as a result of the data breach, two years of credit monitoring, and Eisner's agreement to enhance its security measures moving forward. Based on the range of possible outcomes for this case, the $1.05 million settlement and significant non-monetary benefits represent a good deal for class members.

**b. Risk for Class Counsel and Novelty of Case[1]**

Class Counsel also took significant risk in litigating this case. As an initial matter, Class Counsel litigated this case on a contingency basis, meaning that they assumed an appreciable risk this case would "produce no fee." *Brissette v. Heckler*, 784 F.2d 864, 865–66 (8th Cir. 1986). Class Counsel assumed that risk while bringing negligence-based data-breach claims in an inherently complex area of the law. *Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-cv-3156, 2024 WL 3903550, at * 3 (D. Neb. Aug. 21, 2024) ("Data breach cases are complex, and would rely on extensive electronic discovery and potential

[1] Although the "risk to counsel" and "complexity and novelty of case" factors are distinct, because the analysis of these two factors overlap, the Court will address them together.

discovery disputes, and expert analysis of the dark web and the information available on it."); *Morrison*, 2024 WL 2207563, at *6 ("Data breach cases, by their nature, often raise difficult and often novel issues ranging from jurisdictional Article III standing problems to any number of merits-related questions."). Given the complexity of the claims, Class Counsel stood a very real risk of "recovering nothing in this litigation." *In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/JFD), 2025 WL 3653652, at *3 (D. Minn. Dec. 17, 2025); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."). And even if Plaintiffs prevailed before this Court, lengthy appeals (and a potential reversal) would no doubt have followed. *See Resideo Techs.*, 2022 WL 872909, at *6 ("Even if Plaintiffs were to prevail at trial, they would face the risks associated with any appeal.").

**c. Skill of Attorneys**

All counsel in this case have proven themselves to be competent and vigorous advocates for their clients' interests. Class Counsel and their firms—Strauss Borrelli, Gustafson Gluek, Federman & Sherwood, and Chestnut Cambronne—are highly experienced in litigating class actions. *See* ECF Nos. 63-1–5 (describing experience of each firm). This Court recognized as much when granting Lead Plaintiff status. This factor weighs in Class Counsel's favor. *Morrison*, 2024 WL 2207563, at *6 (finding factor weighed in favor of settlement because of "the lawyers' advocacy in this case . . . [and] the Court's familiarity with the lawyers and their standing in the legal community").

**d. Time and Labor Involved**

Counsel "moved the case along expeditiously," *In re Xcel Energy*, 364 F. Supp. 2d at 996, by securing the settlement in less than a year and expending only 690.6 hours on the case, *id.* (noting that 1,082 hours spent was "efficient and just"). That is particularly true when considering that the parties engaged in multiple rounds of mediation while also briefing Eisner's motion to dismiss. The parties clearly anticipated settling and got this case across the finish line in quick order.

**e. Class Reaction**

The Court's preliminary order granting approval directed the Settlement Administrator to send notices to 85,080 potential class members. ECF No. 78 ¶¶ 7–8. The notices advised potential class members that Class Counsel would apply for an attorney fee award, that the fees would be deducted from the settlement fund, and that members of the class could object. ECF No. 78 at 15. No class members have objected to Class Counsel's fee request. That favors the fees requested here. *Morrison*, 2024 WL 2207563, at *6 (noting that the "absence of objectors shows the class approves of the settlement and supports the requested fee award").

**f. Comparison to Similar Cases**

Class Counsel's request for a 33.33 percent fee award is in line with awards in similar class action cases. In general, courts in this circuit and this district "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions." *Xcel Energy*, 364 F. Supp. 2d at 998; *see also In re U.S. Bancorp*, 291 F.3d at 1038 (affirming a 36 percent fee award); *Krueger*, 2015 WL 4246879, at *2

(granting 33.3 percent fee award); *Resideo Techs.*, 2022 WL 872909, at *7 (granting 25 percent award); *CenturyLink*, 2021 WL 3080960, at *10 (same). That is true in data-breach cases as well. *Morrison*, 2024 WL 2207563, at *6 (approving 33.33% award as "within the typical range approved in the Eighth Circuit").

In sum, each Rule 23(e)(2) factor supports Class Counsel's requested fee award.

**g. Lodestar Cross-Check**

Although not necessary, courts may apply a lodestar "cross-check" to assess the reasonableness of the fee calculated as a percentage of the fund. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). The lodestar methodology calculates a reasonable fee by multiplying a reasonable hourly rate of compensation by the hours expended by an attorney. *See id.*

Here, Class Counsel expended 690.6 hours. *See* ECF No. 71-2 ¶ 36. As for rates of compensation, Class Counsel represent that they charged between $300 to $1,300 per hour, *id.* ¶ 37, which is generally in line for paralegals and attorneys involved in complex class-action litigation. *See Snyder v. UnitedHealth Grp., Inc.*, No. 21-cv-1049 (JRT/DJF), ECF No. 241-2 ¶ 63; ECF No. 249 at 6–7 (D. Minn.) (finding hourly rates of $1,000 to $1,400 for partners, $500 to $725 for associates, and $325 for legal support staff to be "reasonable and consistent with rates" in ERISA class-action litigation); *In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/JFD), ECF No. 3141-1; ECF No. 3255 at 10 (D. Minn.) (finding hourly rates of $850 to $1,150 for partners, $625 for associates, and $300 for legal support staff to be "fair and reasonable compensation" in an antitrust class action).

Although Class Counsel has not provided a means for the Court to independently assess the lodestar total, Counsel represents that its expected total would have been $554,445.50. *Id.* But Class Counsel seeks only $350,000. That amounts to a negative lodestar multiplier of .63. That lodestar multiplier raises no concerns because it is below the range of reasonableness for complex class-action lawsuits. *See Barclay v. iFIT Health & Fitness, Inc.*, No. 19-cv-2970 (ECT/DJF), 2025 WL 3004039, at *14 (D. Minn. Oct. 27, 2025) (citation modified) (noting that a "a negative lodestar rate of 0.51 . . . strongly suggests the reasonableness of the requested fee"); *see also Xcel Energy*, 364 F. Supp. 2d at 1002 (awarding a fee representing a 4.7 multiplier in a securities class action). Accordingly, the Court grants attorneys' fees to Class Counsel in the amount of $350,000.

## IV. Request for Expenses

Class Counsel are seeking $8,892.68 in case-related expenses for a range of expenses incurred in litigating this case, including filing fees, research expenses, and mediation costs. ECF No. 71-2 ¶ 42. Class Counsel represent that the real amount of expenses incurred is higher. ECF No. 71 at 20.

Counsel "who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses." *Krueger*, 2015 WL 4246879, at *3. The Court is satisfied from its review of Class Counsel's declarations that each of the expense categories for which reimbursement is sought is appropriate for payment from a common fund. *See, e.g.*, *Xcel Energy*, 364 F. Supp. 2d at 1000 (finding expenses for "photocopying, postage,

messenger services, document depository, telephone and facsimile charges, filing and witness fees, computer-assisted legal research, expert fees and consultants, and meal, hotel, and transportation charges for out-of-town travel" were reasonable). And because Class Counsel represented Plaintiffs on a contingent-fee basis, Class Counsel "had a strong incentive to keep these expenses at a reasonable level." *Krueger*, 2015 WL 4246879, at *3. The Court therefore awards Class Counsel $8,892.68 for its expenses.

**V. Service Awards**

Plaintiffs finally request a $2,500 service award to each of the Class Representatives. ECF No. 71 at 21.

Courts often grant service awards to class representatives named in class action suits "to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (citation modified). In determining whether to grant a service award, courts consider the actions that Class Representatives took to protect the class's interests, the degree to which the class has benefitted from those actions, and the time and effort the Class Representatives expended in pursuing litigation. *See In re U.S. Bancorp*, 291 F.3d at 1038.

Here, each of these factors favors granting service awards. Class Representatives have been involved in this litigation since its outset, and they assisted the progression of this case by contacting counsel, researching similar data-breach incidents, helping counsel formulate a settlement strategy, responding to discovery, and attending appointments with counsel. *See, e.g.*, ECF No. 71-3 ¶ 6; *see also* ECF Nos. 71-4–71-10. These efforts are similar to those in cases where courts have deemed service awards appropriate. *See*

*Caligiuri*, 855 F.3d at 867–68 (affirming service awards when class representatives "participated in interviews, assisted with discovery, were deposed, participated in conferences, and met with attorneys throughout the litigation process"); *In re Xcel Energy*, 364 F. Supp. 2d at 1003 (awarding service awards when class representatives "reviewed pleadings, conferred with counsel, provided information [to counsel], responded to discovery, and reviewed and consented to the settlement"). In recognition of the pivotal role played by the Class Representatives and the benefits they helped secure on behalf of their fellow class members, the Court grants service awards of $2,500 each to Christopher Niosi, Andrew Marston, Ryan Hiatt, Robert Crist, Rebecca L. Lemmons, David Fallen, Chris Ouellette, Hannah Watzka, and Timothy Rushing for a total of $22,500.

**CONCLUSION**

For these reasons, and based on all the files, records, and proceedings in this matter, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 72) is **GRANTED**.

2. Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 68) is **GRANTED** as follows:

   a. Class Counsel's request for an attorneys' fee award of $350,000 from the Settlement Fund is approved.

   b. Class Counsel's request for litigation expenses of $8,892.68 is approved.

   c. Service awards of $2,500 each are granted to Class Representatives Christopher Niosi, Andrew Marston, Ryan Hiatt, Robert Crist, Rebecca L. Lemmons, David Fallen, Chris Ouellette, Hannah Watzka, and Timothy Rushing.

3. This action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: October 20, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge